EUGENIUS F. EDELEN, SURVIVING HUSBAND OF ELIZABETH A. EDELEN, *vs.* ALEX. MIDDLETON.—*December* 1850.

A testator bequeathed certain negroes to his son, "to be paid to him after the natural life of my wife, *Eleanor*, and myself, at which death may last happen. But in case my said son shall die *without lawful issue, and before he possesses said negroes*, in case thereof, my will and desire is, that the whole of them shall go to my daughter," and in case his "daughter should die as aforesaid," then to his second daughter, and so down to the youngest child. The son died without issue in the lifetime of the testator. HELD: That the limitation over to the daughter, is good as an executory devise.

The fact that the thing devised is personal property, does not, *per se*, make a general failure of issue, after which it is limited over, mean a definite failure of issue.

A different rule prevails in the interpretation of the same words as to limitations over after a failure of issue, in a will disposing of realty, and a will disposing of personalty, but such a discrimination is never made where there is no expression or circumstance in the will which the court can lay hold of as evidence of some intention in the testator, that it should be a definite failure of issue.

The cases of *Dallam vs. Dallam*, 7 H. & J., 240. *Newton vs. Griffith*, 1 H. & G., 111, and *Briscoe vs. Briscoe*, 6 G. & J., 232, as to this point, examined and explained.

In this case, the words "and before he possesses said negroes," are so connected with the proceeding, as to show that the testator meant a definite failure of issue, a dying without issue before the right to possess the property devised should accrue.

The widow of the testator possessed a life estate in the negroes, and the remaining interest after the death of the son without issue, passed to the daugh-

ter as a vested remainder, and upon her death, leaving issue then living, such vested remainder, became the property of her surviving husband; the surviving husband of the deceased child and only issue of the daughter, has no claim whatever to the property.

The words, "failure of issue," were not designed to give to such issue any interest in the property bequeathed, but were merely used as descriptive of the event, upon the happening of which,.the otherwise absolute title of the legatee was to be defeated.

The rule that a devise of land without words of perpetuity or inheritance, with a limitation over on a dying without issue, enlarges the estate of the devisee from a life estate to an estate tail, has no application to such bequests of personal property.

In bequests of personal estate without words of perpetuity, the legatee does not take a mere life estate which can be enlarged by subsequent limitation, but an absolute estate which is incapable of enlargement.

The reason why such a limitation over of land is equivalent to an express devise, is, because if there should be issue at the death of the devisee, the limitation over could not take effect until such issue became extinct, and if the issue were not in such a case to take, there is nobody who could take under the will.

APPEAL from *Charles* county court.

This was an action of *trover* brought by *Eugenius F. Edelen,* (the appellant,) against *Alexander Middleton,* (the appellee,) to recover in right of his deceased wife, a negro woman, *Poll,* and her increase, and *Gusty*, mentioned in the clause of the will of *John B. Thompson,* executed in 1808, and admitted to probate 1815, recited in the opinion of this court by his honor, C. J. DORSEY.

*Mary Ann Thompson,* mentioned in this clause, married the appellee, and died prior to the death of the testator's widow, *Eleanor Thompson,* leaving issue, a daughter, the deceased, wife of the appellant. *Ignatius F. Thompson,* named in said clause, died without issue in the lifetime of the testator.

The pleas were, *non cul* and limitations. The only question decided in this case, arise upon the rejection by the court, (CRAIN, A. J.,) of the two following prayers offered by the plaintiff below, in which, and in the opinion of this court, all the facts of the case are stated.

1st. That by the true construction of the will of *J. B.*

*Thompson*, the negro *Poll* and her increase, became the property of the issue of *Mary A. Middleton*, provided the jury find the deaths of *Ignatius F. Thompson* and *Mary A. Middleton*, in the lifetime of *Eleanor Thompson*, the widow of testator, and before either of them possessed said property, and that *Ignatius F. Thompson* died without issue.

2nd. That by the true construction of the will of *John B. Thompson*, the issue of *Mary Ann Thompson*, named in said will, who was living at her death, became entitled to the negro woman *Poll*, and her increase, after the death of *Eleanor Thompson*, provided the jury find that *Ignatius F. Thompson*, named in said will, died before the testator, without issue; and that *Mary Ann Thompson* died before *Eleanor Thompson*, without having possessed *Poll* and her increase.

The verdict and judgment were for defendant, and plaintiff appealed.

The cause was argued before DORSEY, C. J., MAGRUDER and FRICK, J.

By R. T. MERRICK and ROBT. J. BRENT, for the appellant, who contended:

1st. That limitation over in said clause, is good as an executory devise, and not too remote, the "dying without lawful issue," being brought within the rule of law by the second contingency, viz: the life of the life-tenant.

2nd. That the limitation over to *Elizabeth Thompson*, third legatee mentioned in the will, being defeated by the birth of issue, was defeated in favor of the issue; and it was the true intention of the testator, that if any of the legatees survived himself and wife, *then* that legatee was to take, possess and enjoy the property bequeathed; and if any of the legatees in the order named, had "lawful issue," and died prior to himself or wife, then that issue was to take, possess and enjoy the property, notwithstanding the survivorship of subsequently named legatees.

Causin, for the appellee, insisted that the prayers were properly rejected:

1st. Because under no construction warranted by the law, could the wife of the plaintiff below claim title, except through her mother, the legatee, under the will of *John B. Thompson*—the estate bequeathed giving no separate interest to the issue of *Mary Ann Thompson,* (mother of the plaintiff's wife,) by way of remainder—the word issue, being used in the will as simply denoting the contingency, upon the happening of which, the estate in the property bequeathed, was to vest in *Elizabeth Thompson.*

2nd. That the estate thus vesting an interest in *M. A. Thompson,* wife of appellee, during coverture, enured to his benefit, and it was his right to reduce it into possession, by taking the property in his own charge.

Dorsey, C. J., delivered the opinion of this court.

But two questions have been argued and submitted for decision in the case now before this court. The first of which is, whether, the limitation over to *Mary Ann Thompson,* in the will of *John B. Thompson,* is a good executory devise. The clause in the will, under which the present controversy arises, is in these words; "I give and bequeath unto my son, *Ignatius Fielder Thompson,* two negroes, the one called *Pol,* who is the wife of *Nace,* and the other her child called *Gusty,* as also, the said *Pol's* future increase, that she may have hereafter, to be paid to him after the natural life of my wife, *Eleanor* and myself, at which death may last happen. But in case my said son shall die without lawful issue, and before he possess the said negroes, in case thereof, my will and desire is that the whole of them shall go to my daughter, *Mary Ann Thompson;* in case she, my said daughter, should die as aforesaid, my will and desire is, that the property aforesaid, shall go to my second daughter *Elizabeth Thompson,* and so on, down to the youngest of my children; this being according to a particular contract made with my brother in law, *Ignatius Middleton,* at the time I swapt with him for said negro *Pol.*"

*Ignatius Fielder Thompson*, named in the aforegoing clause, died without issue, in the lifetime of the testator. *Mary Ann Thompson* married *Alexander Middleton* the appellee, and died prior to the death of *Eleanor Thompson*, the widow of *John B. Thompson*, leaving one child, the deceased wife of the appellant. By an act of the General Assembly of this State, the death of *Ignatius Fielder Thompson*, did not cause the legacy to him to lapse, but it passed to his executor or administrator, in the same manner that it would have done had he survived the testator and then died. On the part of the appellant it is contended, that although the limitation over, be after a failure of issue generally, yet that, inasmuch as the thing bequeathed is personal property, such a failure of issue *per se* means a definite failure of issue; a dying without issue, living at the time of the death of the prior legatee. And for the establishment of this principle, numerous authorities were referred to, none of which it is believed, give any countenance to such a doctrine, except an *English* decision long since overruled, and a *dictum* to be found in a passage of this court's opinion, in *Dallam vs. Dallam*, 7 *Har. and John.*, 240. It is true the learned judge, (who delivered the opinion of the majority of the court, in that case, relating only to a devise of land, and where there were other expressions in the will showing a definite failure of issue was meant,) does say: "and it is not like the case of a limitation over, on a dying without issue generally, which, however a plain man might understand it, is now, when applied to real estate, technically construed to mean an indefinite failure of issue; though the same rule does not extend to dispositions of personal property." But in the principle thus enunciated all that the court designed to say, was, that a different rule prevailed in the interpretation of the same words, as to limitations over, after a failure of issue in a will disposing of realty, and a will disposing of personalty. And in this distinction it was undeniably correct; the books being full of cases making such a discrimination. But such a discrimination is never made, where there is no expression or circumstance in the will, which the court can lay hold of as

evincive of some intention in the testator, that it should be a definite failure of issue.   That such was the meaning of the court, in the passage of their opinion, in *Dallam vs. Dallam*, is clear almost to demonstration, when we advert to its opinion, in *Newton vs. Griffith*, 1 *Har. and Gill*, 111; written by the same judge, and both cases being submitted to him to prepare the court's opinions, which were both prepared by him about the same time, before either was filed with the clerk of the court.   It is impossible to read the courts opinion, in *Dallam vs. Dallam*, and that part of its opinion, in *Newton vs. Griffith*, in the 117, 118, 119 and 120 pages, without being convinced that the opinions, in the two cases, ought to be made to harmonize in the mode suggested.

The case of *Briscoe vs. Briscoe*, 6 *Gill and John.*, 232, has been relied on to prove that a limitation over of personal property, after a dying without issue, generally is good as an executory devise, and that the court will, in such a case, without any other words or circumstances in the will indicating such an intention of the testator, regard the limitation over as being after a definite failure of issue, that is, a failure of issue at the death of the first legatee.   But this case is rather an authority for the converse of this proposition.   It is there said, that "in order to support the limitation over, the courts, in such cases, generally incline to lay hold on any expression or circumstance in the will, which seems to afford a ground for such a construction."   Now if a limitation over, after a failure of issue, generally, *per se*, imported a definite failure of issue, it is strange that courts should waste their time in searching for such expressions or circumstances to lay hold on them, that they might make such a construction when they were bound to have made it, whether such expression or circumstances were to be found in the will or not.   But the case of *Hatton vs. Weems*, 12 *Gill and John.*, 83, is an express adjudication that such limitations over, are void, when unattended by such expressions or circumstances.   That such is the law in *England*, is fully established by the following authorities; 1 *P. Wm's.* 663.   *Fourth and Chapman; 2 Atk.*, 308.   *Beauclerk*

*vs. Dormer;* 3 *Atk.*, 287. *Sheffield vs. Ld. Orrey;* 2 *Vez., Jr.,* 535. 2 *Atk.*, 646. *Read vs. Snell,* and *Fearn on Rem.*, 472. Our next inquiry is, are there in the will before us, any words or circumstance from which an inference can be drawn, that a definite failure of issue was intended by the testator? We think there are. The limitation over, is, if the "son shall die without lawful issue and before he possess" the said negroes. These latter words are so connected with the preceding, as to show that the testator meant a definite failure of issue, a dying without issue, before the right to possess the property devised should accrue. The possession of the first legatee, if it occured at all, must take place upon the death of the testator and his wife, two lives in being, and it is apparent that the testator looked to a dying without issue, before the right to possession could arise. He must therefore be presumed to have intended, or, at least, in our efforts to give efficacy to his bequest, we are justified in presuming, that the limitation over, was only to take effect upon the death of the first legatee without issue then living. *Ignatius Fielder Thompson,* having died without issue living at the time of his death, and having never acquired the possession of the negroes, the limitation over to *Mary Ann Thompson,* is good as an executory devise. *Mary Ann Thompson,* having died leaving issue, but, in the life time of the widow of the testator, the second question in this cause presents itself, viz: in whom is the title to the property bequeathed? in the appellee as the surviving husband of *Mary Ann Thompson,* or, in the appellant, as the surviving husband of her daughter, her only issue? And upon this subject, although the rights of the appellant have been pressed upon the court with the greatest ingenuity and zeal, yet we feel not a momentary doubt in declaring, that the appellant has not the shadow of a claim to the property in controversy. The bequest of the negroes to *Ignatius Fielder Thompson,* passed to him as absolutely the title thereto, subject to a life estate in another, as could have been done by the addition of any words of perpetuity or otherwise. And upon his death without issue then living, the same title passed to *Mary Ann Thomp-*

son. *Eleanor Thompson*, the widow of the testator, being in possession of the negroes, with a life estate only therein, the remaining interest in the negroes passed to *Mary Ann Thompson*, as a vested remainder; and upon her death leaving issue then living, such vested remainder became the property of her surviving husband, as would any other of her choses in action under the testamentary laws of *Maryland*. There were in the will no words of express or implied bequest to the issue of *Mary Ann Thompson*, or of limitation over to it, upon any contingency; and consequently it can have no standing in court, in the action before us. The words, "failure of issue," in the limitation over, were not inserted in the will of the testator, to indicate that he had given or designed to give to such issue, any interest in the property bequeathed; but were merely used as descriptive of the event or contingency, upon the happiness of which, the otherwise absolute title of the legatee was to be defeated.

The cases which have been referred to on behalf of the appellant, where it was held, that a devise of land to a devisee, without any words of perpetuity or of inheritance, with a limitation over on a dying without issue, enlarges the estate of the devisee from an estate for life to an estate tail, have no application to such bequests of personal property; because, in the latter class of cases, by the first part of the bequest, the legatee does not take a mere life estate, which could be enlarged by the subsequent limitation, but takes an absolute estate in the property which is incapable of enlargement. The reason why such a limitation over in the former class of cases is equivalent to an express devise to the issue is, because if there should be issue at the death of the devisee, the limitation over could not take effect till such issue became extinct, and if the issue were not in such a case to take, there is nobody who could take under the will. But in such bequests of personal property upon the death of the legatee, his interest in the property immediately vests in his executor or administrator. This principle was in fact decided in *Forth vs. Chapman*, 1 *P. Wms.*, 667, where the lord chancellor says: "That the reason why the devisee of

a freehold to one for life, and if he die without issue then to another, is determined to be an estate tail, is in favor of the issue, that such may have it and the intent take place; but that there is the plainest difference betwixt a devise of a freehold, and a devise of a term for years, for in the devise of the latter to one, and if he die without issue then to another, the words if he die without issue cannot be supposed to have been inserted in favor of such issue, since they cannot by any construction have it." Concurring in opinion with the county court, in its refusal to grant the first and second prayers of the appellant in his second bill of exceptions, its judgment is affirmed.

JUDGMENT AFFIRMED.