## James F. Woodland and wife, *vs.* Hugh Wallis, Exc'r of Mary M. Mason.

A testator gave to his daughter all his property real and personal, to her and her heirs forever, except two negroes who were to serve, the one four and the other seven years after his death: "also the children, Elizabeth, George

and Jervis, should each of them be free when they arrive at the age of thirty years, if my daughter should die without heir, but if not, then the said children to serve for life. But if my daughter should die without heir it is my will that the children of" W. and T., "should have my real and personal estate with the above exceptions, equally divided between them and their heirs forever." The daughter died without issue before said negroes attained the age of thirty. HELD :

1st. That words "*die without heir*" in the bequest of freedom to the negroes, does not mean an indefinite failure of issue : the negroes being *in esse* at the date of the will, and freedom being a personal privilege to be enjoyed only by the person to whom it is given, the contingency upon which it is to depend must necessarily occur within a life in being.

2nd. That the *same words* in the next sentence, so far as they relate to the devise over of the personalty, mean also a dying without leaving issue at the death of the daughter, the fact that in the first sentence they are to be understood in their restricted sense being a circumstance which the court will lay hold of to support the limitation over. .

In cases of executory bequests of personal estate, the words "dying without issue," will be restricted to mean a definite failure of issue, by any clause or circumstance in the will, that can indicate or imply such intention in the testator. .

APPEAL from the Circuit Court of Kent County.

This was a suit by the appellants against the appellee, docketed by consent in the court below, to determine the question whether the plaintiffs have any title under the will of John Mason, executed in 1826, to George and Jervis, two negroes, therein mentioned.

The material points of this will are stated in the opinion of this court, and the statement of facts upon which the case was tried below further shows: that the testator died in 1829, that the wife of the appellant Woodland, was formerly Margaret Travilla, daughter of Philip B. Travilla and Ann his wife, mentioned in said will: that Mary M. Mason the testator's daughter took possession of the property bequeathed to her after his death; and died on the 11th of October 1843, unmarried and without issue, leaving a will, in which she appointed the appellee her executor, and gave him all the residue of her property including negroes, and that negro Elizabeth died during the life of Mary M. Mason, and the negroes in controversy were taken possession of after her death, by

the appellee as her residuary legatee. It was further agreed that if the court upon this statement of facts should be of opinion that the plaintiffs were entitled to recover, judgment should be entered in their favor for $150, and the negroes to remain the property of the defendant until they attained thirty years of age, when they were to be free, but if the court should be of opinion the plaintiffs were not entitled to recover, then judgment was to be entered for the defendant, and either party was to have the right of appeal.

The court (HOPPER, J.,) gave judgment for the defendant, and the plaintiffs appealed.

The cause was argued before LE GRAND, C. J.; ECCLESTON, MASON and TUCK, J.

*B. C. Wickes* for the appellant.

The single question presented in this case is, whether under the will of John Mason, the limitation over of the negro property is good, or whether the daughter Mary M. Mason, took an absolute property therein.

The only authorities to which I propose to refer, are *Davidge vs. Chaney*, 4 *H. & McH.*, 393. *Johnson vs. Negro Lish*, 4 *H. & J.*, 441, and *Biscoe vs. Biscoe*, 6 *G. & J.*, 232. The opinion of the court in the last case, containing as it does a review of the two preceding ones, and a full examination of the whole doctrine of the limitation over of personal property, after a definite or indefinite failure of issue, and especially of the executory bequests of the peculiar property here involved, I must desire the court to read and regard as a part of this argument. The doctrine is there laid down in the broadest terms: "That in relation to executory bequests of personal estates, the words 'dying without issue or without heirs,' may be restricted to mean a dying without issue living at the death of the party, by any clause or circumstance in the will that can indicate or imply such intention in the testator, and that in order to support the limitation over, if they can, courts generally incline to lay hold on any expression or

20     v.6

circumstance in the will, that seem to afford a ground for such a construction." The court then rest their decision upon the simple fact, that the subject of bequest was a negro man, and therefore, it must have been the meaning of the testatrix, that the limitation over should depend upon the fact of J. M. Biscoe's dying without issue in the lifetime of this negro man. Then follows a review of the two cases above referred to, the authority of each of which is alone recognized upon the ground, that the limitation was of "negro women and *their issue.*" Can there be any doubt that the court recognizes the correctness of these decisions, upon the sole ground that the limitation was of a woman and her *issue,* and without the words her *issue* or some equivalent phrase, the mere limitation over of a negro woman would have been regarded as good? and yet it is upon the authority of these two decisions, that the appellee chiefly relies in the present case. The distinction taken in *Biscoe vs. Biscoe,* between the limitation over of a negro woman, and a negro woman and *her issue,* is so broad, and the reasons of the effect given to the expression, "*her issue,*" so distinctly stated, that no argument on my part can add either explicitness or force to the application which I desire the court to make of them to the present case. I can only point attention to the fact, that in this case the limitation over is of a woman and two men, that there are no expressions indicating that the testator had in view the increase or issue of the woman, but that he was thinking of her as of the men, in her sole and individual capacity. This entire absence of any expression in regard to the issue of the woman, does away with the possibility of a meaning upon the part of the testator, that the limitation over should take effect in regard to her issue, after an indefinite failure of issue upon the part of Matilda Mason, and withdraws this case, both upon principle and by the authority of *Biscoe vs. Biscoe,* from the application of the decisions in 4 *H. & J.,* and 4 *H. & McH.* But there is in addition to this, an expression in the will by which the dying without heir is yet more definitely limited, than by the lives of the

slaves bequeathed. Under this will the limitation over can only take ·effect upon the dying without heir, before the negroes reach the age of thirty.

*James A. Pearce* for the appellee.

I shall consider 1st, the effect of the will as if the conditional bequest of freedom to the negro children were not a part of it. There can then be no doubt that the bequest over to the children of Wallis and Travilla, would be void as being too remote. The words, "if my daughter should die without heir," mean, if *my daughter should die without heirs or issue*, and this language being indefinite and not restricted by any expression indicative of an intention, that the first estate should cease on the daughter's dying without *leaving* issue at the time of her death, the bequest over would be void. 4 *H. & McH.*, 397. 4 *H. & J.*, 441. 12 *G. & J.*, 86, *Hatton vs. Weems.*

In the latter case, the two first are relied upon and affirmed, and the limitation over is held to be void. It is true that where the bequest was of a negro man, the court in 6 *G. & J.*, 232, held, that the language of the will, which looked to an indefinite failure of issue, was restricted and qualified by the subject matter of the bequest, which, being a negro man, the executory bequest of him must take effect, if at all, during his life. But when negroes, male and female, are the sub-jects of the bequest, the construction is different, and the indefinite failure of issue is not so restricted as to mean a failure of issue at the death of the first taker. Such is the case here, there being one female among the negroes bequeathed over. The case will probably be discriminated from that in 12 *G. & J.*, because the increase of Elizabeth is not expressly mentioned in this will. But though that is the fact, yet the legal effect of the bequest to his daughter as fully carries the increase of Elizabeth, as if her increase or issue were given in positive terms. *Partus sequitur ventrem.* The gift or bequest of a female slave is a gift or bequest of her and her issue. The necessary legal implication is as strong and con-

clusive as any words, however expressed, could make it. If the woman only, and not her issue, had been intended to be bequeathed, positive words would have been necessary to restrain the inevitable legal conclusion. So that in legal contemplation this must be considered a bequest of a woman and her increase; and on the principle of *Hatton vs. Weems*, the testator must be held to have meant an indefinite failure of issue.

If this be so, what effect can the conditional bequest of freedom to the negroes have, as a preponderating circumstance in the will, limiting the failure of the issue of Mary M. Mason, making it definite, and to signify a failure within a life in being? The gift of freedom to a negro is a bequest, and if dependent upon a failure of issue, it must be construed as the bequest of a negro to a third person under the same circumstances. If this be correct, there can be no doubt that the contingent bequest of freedom to the negroes cannot control the construction which would otherwise obtain. The gift of freedom to the negroes was altogether subordinate to the bequest to his daughter. It was not to control that bequest, but to be controlled by it. It was not to be determined by their arrival at thirty years of age solely or principally, but by the failure of her issue, with nothing to restrict that failure to a definite event. The daughter and her issue were the principal, I might almost say, the sole objects, of the testator's bounty. The bequest over was only to take effect on an indefinite failure of her issue, and the gift of freedom to take effect only upon the vesting of the bequest to the children of Wallis and Travilla, which is shown to have been legally impossible. Their freedom, therefore, was equally a legal impossibility.

*George Vickers* on the same side.

In construing wills, while the intention of the testator is the *desideratum* of the courts, and greater latitude is allowed to find that intention, yet in the language of 2 *Powel on Devises*, 1, 2 & 3, the limit is "ascertained by rules sufficiently

definite," and the judges are guided through their beaten tracks "by general principles," judging, as said by Lord Coke, "according to the rules of law," "submitting to be bound by precedents and authorities in point, and endeavoring to collect the intention, upon grounds of a judicial nature, as distinguished from arbitrary conjecture."

In the examination and analysis of this will, two points are presented: *first*, the condition on which the gift of freedom to negroes, Elizabeth, George and Jervis, is made to depend; *second*, the bequest over of personal property to the children of Wallis and Travilla. These questions should be distinctly discussed and considered.

*First.* The first disposition is of "estate, real and personal, to his daughter Mary M. Mason, and her heirs forever." Having thus given the entire interest, he abridges the service of two of his slaves, Ann and Thomas, to 4 and 7 years, and directs that Elizabeth, George and Jervis, shall each be free at the age of 30, if his daughter should die without *heir*, but if not, then they should serve for life. The word "heir," is to be construed "heirs" in its general sense. 2 *Jarman on Wills*, 2. 1 *Salk.*, 238, *Arundel vs. Jones.*

The devise to the daughter is, virtually, as if in this form: "To my daughter, I give all my real and personal estate, to her and her *heirs forever*, but if she shall die *without heirs*, I give freedom to my servants, Elizabeth, George and Jervis, on their arrival at the age of 30 years." The gift of freedom is too remote. If these negroes had been given to another, the limitation over would have been void. If the word "heir" or "heirs," is to be construed "heirs of the body," a gift over, even of personal property, cannot take effect. 3 *H. & J.*, 238, *Thomas vs. Mann.* Although courts have been more liberal in construing the words, "dying without issue," or "without heirs of the body," when applied to bequests of personal estate, yet the current of authorities, and the received and established interpretation of those words, now are, that they do not give effect to a bequest over, but that such limi-

tation is void. 4 *H. & McH.*, 393, *Davidge vs. Chaney.* 1
*H. & G.*, 110, 117, *Newton vs. Griffith.*

To give validity to a limitation over of personalty, other
words must be added, as "leaving" before the words "heirs
of the body" or "issue." The word, "after" or "at" the
death "without issue," may also restrict the "dying without
issue," to the period of the legatee's death; but, there are no
such qualifying words in this will, and we must look to some
other circumstance or expression for equal efficiency. It is
alleged, that the period at which freedom is contingently given,
fixes the time when the contingency happens for the devise
over to become effective. It will be conceded, that the gift
over of property to a survivor or person living, after a general
condition of "dying without issue," or "heirs of the body,"
is too indefinite and remote. The existence of the second
legatee does not restrict, or contribute to fix, the period for
the happening of the contingency. The bequest of freedom
has been determined to be a legacy. *Spencer vs. Negro Den-
nis*, 8 *Gill*, 318. If then the gift to another after a dying
without issue, will not take effect, can the gift of freedom
have any greater validity? After the liberal provision in
favor of his daughter, the leading thought and controlling
purpose of the mind of the testator, was her death without
"heirs," that event was the next in magnitude, and to pro-
vide for it was essential; the freedom of the negroes was
contingent and collaterally introduced, and was not the main
purpose, the period on which the bequests over were to
depend. Can it be supposed, that the testator used the word
"heir" in any other sense than that of limitation? *A nomen
collectivum.* 1 *Powel on Devises*, 393. Did he not mean
that the issue of his daughter should become extinct before
freedom should commence? Is there any thing to distinguish
this case from a general devise over to a person *in esse*, a
survivor of two legatees, where the limitation cannot take
effect?

But *Secondly.* If the argument in reference to the freedom
of the negroes is not conclusive, the construction of that part

of the will relating to the devise over to the children of Wallis and Travilla, should be made independently of the bequest of freedom, and construed, a devise after general failure of "heirs of the body." It is a fair and natural mode of construing wills, that when they operate upon different classes of property, as upon real and personal estate, although disposed of in one sentence, and by the same words, that the construction should be, as if the property were given in two distinct clauses. This principle is found in *Forth vs. Chapman*, 1 *Peere Wms.*, 663, 667. Adopting the spirit of this rule as applicable to this will, and we shall have it in this form :

*Item.* I give and bequeath to my daughter Mary Matilda Mason, all and singular the property, real and personal, that I now possess, to her and her heirs forever, subject to the following exceptions.

*Item.* I liberate my negro woman Ann at the end of four years, and my negro man Thomas, at the end of seven years, from my death.

*Item.* The children Elizabeth, George and Jervis, shall each of them be free when they arrive at the age of thirty years, if my daughter should die, &c., &c.

*Item.* If my daughter should die without heir, (heirs,) it is my will that the children of Hugh Wallis and Margaret B. Wallis, and the children of Philip B. and Ann P. Travilla, shall have my real and personal estate, equally to be divided between them and their heirs forever.

After the definite and contingent gift of freedom, that portion of the will is to be taken as perfectly concluded, and a new and different subject to occupy the thoughts of the testator. The question, naturally arose in his mind, to whom and when, shall my property, real and personal pass, if my daughter should die without heirs of her body ? If she leave issue, it will take, if that issue leave issue, it will take, but if her issue shall become extinct, then I will give all to the children of Wallis and Travilla. The true meaning of this will then is, that upon the extinction of his daughter's issue, whenever it may happen, the property shall go over.

The freedom of negroes at any specific period, in a previous clause, would of necessity be an exception to a subsequent gift of all the personal estate, absolutely. So in the present case, these words of exception are superfluous, they are not such chief and significant words in the sentence, relating only to a portion of the negroes in a former bequest, as to change essentially the legal import of the words, "dying without heir," they naturally refer to the exception in favor of Ann and Thomas, and being adapted to such an application, cannot be construed to refer to other matters, and are irrelevant to the object and purpose of the testator, in relation to the persons and estates of the legatees over.

In *Newton vs. Griffith*, 1 *H. & G.*, 110, while the court say, they incline to construe a limitation after a "dying without issue," to mean at the death of the first devisee, they at the same time declare that a "dying without issue is too remote," and the word "leaving" prefixed, is necessary.

In the cases referred to in 1 *Peere Wms.*, 663, and 3 *Term Rep.*, 145, the words "leave" and "leaving no issue behind him," are considered requisite to restrict the dying without issue to the death of the devisee. The same necessity is recognized in 4 *H. & McH.*, 393, *Davidge vs. Chaney*. In *Johnson vs. Negro Lish*, 4 *H. & J.*, 441, the limitation over was decided to be too remote. The principle asserted by the opinion is, "that a limitation of a chattel to take effect after an indefinite failure of issue, tends to a perpetuity and is void."

The case of *Biscoe vs. Biscoe*, 6 *G. & J.*, 232, does not square with the case under consideration, nor do any of the cases cited, as sustaining a bequest over, conflict with the principles laid down for the construction of this will. The case in 12 *G. & J.*, 86, *Hatton vs. Weems*, where male and female negroes are given in the same clause, and if the legatee die "without lawful issue to heir the same," then over, strengthens our position. The fact, that negroes of both sexes were embraced in the same clause, decided the character of the bequest, and produced the conclusion that the de-

vise over was too remote. The gift of the *increase* could have had no effect upon the mind of the court, because the bequest of stock, plantation utensils, &c., was to the first legatee in the same manner as the negroes. In this will the negroes were male and female, and other negroes not named in the will, also passed to the children of Wallis, and this case is stronger than *Hatton vs. Weems*, as the gift in that case was to the first legatee for life, while here it is to the daughter and her heirs forever, using the same word adverted to in *Johnson vs. Negro Lish*, 4 *H. & J.*, 441.

The conclusion upon this portion of the will is, that the executory bequest to the children of Wallis and Travilla, was intended to take effect upon the death of Mary M. Mason, and the death of her issue without issue, whenever it might occur, but being too remote according to the rules of law, the whole property vested in the Mary M. Mason, and her right to dispose of it is unquestionable.

*J. B. Ricaud* for the appellants in reply.

Where there are expressions in the will to limit the word issue, the remainder is good. Courts in the interpretation of wills will only be restrained by settled rules of law, and will lay hold of any circumstance to make the limitation good. The words of this will must show that he never intended or contemplated an indefinite failure of issue. The limitation over was to persons *in esse*, and the gift of freedom to certain of the negroes at the age of thirty years, shows that the testator intended the bequest over to be good upon the death of his daughter without issue, living at the time of her death. The intention of the testator was to provide for the comfort and support of his only child and heir at law. If she died without leaving children living at the time of her death, and which event was limited by the testator within a definite time, by the gift of freedom to his slaves at the age of thirty years, his intention was that the children of Wallis and Travilla then living, should hold the negroes for the unexpired term of their servitude. Courts have always been more liberal in the con-

struction of wills, when applied to bequests of personal prop-
erty. 4 *Kent,* 281, 282. The case of *Drury vs. Negro
Grace,* 2 *H. & J.,* 356, is also relied upon by us, where the
words of the will were to one and her heirs forever, and in
case of her death without lawful issue, then to another during
widowhood—the devise over was sustained because of the
limitation during widowhood—so in this case, the limitation
over was good, because the time of the happening of the
event was fixed at a period within a life or lives in being. In
bequests of personal estate the words dying without issue
mean a definite failure of issue. 1 *Peere Wms.,* 534. *Fearne,*
224.

Courts generally incline to pay attention to any circum-
stance or expression in the will relating to personal estate,
which seems to afford a ground for construing a limitation
after dying without issue, &c., to mean a dying without issue
living at the death of the party. *Dallam vs. Dallam,* 7 *H. &
J.,* 220. 1 *H. & G.,* 111. 1 *Peere Wms.,* 663. The dis-
tinction between "dying without issue," and dying without
leaving issue appears subtle, but is a settled distinction. But
the signification of the words may be confined to a dying
without issue "living," by any clause or circumstance in the
will which can imply such intention and effect given to the
limitation. 6 *G. & J.,* 236, 237. The character of the con-
tingency depends upon the sense in which the testator, from
any clause or circumstance in the will, is supposed to have
used the expression dying without issue, &c. 6 *G. & J.,*
238. It has been held, that a limitation over for life to one
*in esse,* after a dying without issue may be good, because the
limitation being only for life it must take effect during that
life or not all, and therefore the failure of issue in that case
is confined to a life in being. The circumstance of a bequest
for life to one *in esse,* which must therefore take effect, if at
all, during his life, is supposed to be a circumstance to indi-
cate that the testator intended a definite failure of issue. 6 *G.
& J.,* 238. Mason, must have intended a definite failure of
issue in his daughter, because the limitation over must take

DECEMBER TERM, 1854. 163

Woodland & wife, vs. Wallis, Exc'r of Mason.

effect before a life or lives in being had attained the age of thirty years, so that the expression and limitation would read, "in the event of the death of my daughter dying without issue living at her death, the appellant and other legatees would have an estate in the negroes until they should attain the age of thirty years," or, in other words, that the limitation over, if it happen at all, must happen before the negroes had lived to the age of thirty, if after that period the negroes would have been free at her death. So where there was a devise to a woman for life, and after her death to such child as she was supposed to be *enceinte* with, and the heirs of such child with a limitation over, if such child as should happen to be born should die before the age of twenty-one, it was held to be a good executory devise, as it was to commence within twenty-one years after a life in being, and that if the contingency of the child being born never happened, the limitation was to take effect on the death of the woman. 1 *Wils.*, 105. So to quote the language of the Court in 6 *G. & J.*, 242, if the limitation had been "if Mary M. Mason should die without issue in the lifetime of the negroes, and before the said negroes had attained the age of thirty years, could a doubt have been entertained that it would have been good?"

The case in 12 *G. & J.*, 84, does not clash with this decision, as the distinction is clearly drawn between a negro woman and a negro woman and her issue, and the language of this will is, the children of negro Elizabeth, and the negroes George and Jervis should *each* of them be free when they arrive at the age of thirty, if my daughter should die without heir. Here the pronoun, each, qualifies the bequest of freedom to each negro, and must be read as if a separate bequest of freedom had been to each one of them, if the daughter had died without children living at the time of her death, or at any time within the lifetime of each of said negroes before the age of thirty, or that the limitation was to take effect, if at all, within a certain period within a life or lives in being. Suppose the limitation had been during the life of the said Mary M. Mason, and at her death without

issue then each of said negroes to be free, would it not have been good, as the limitation must have happened within a life or lives in being, and is not the position stronger when the limitation must take effect within a certain period of a life or lives in being?

ECCLESTON, J., delivered the opinion of this court.

We understand this suit, by agreement of counsel, has been instituted for the purpose of having a decision upon the question, whether, under the will of John Mason, the plaintiffs have any right to a share or portion of negroes George and Jervis. There is no controversy in regard to Elizabeth, as she died in the lifetime of Mary M. Mason.

The portion of the will which relates to the subject is as follows: "I give and bequeath to my daughter Mary Matilda Mason, all and singular, the property, real and personal, that I now possess, to her and her heirs, forever, except my negro man Thomas and my negro woman Ann, who it is my will that Thomas should serve four years and Ann seven years after my death; also the children, Elizabeth, George and Jervis, should each of them be free when they arrive at the age of thirty years, if my daughter should die without heir, but if not, then the said children to serve for life. But if my daughter should die without heir, it is my will that the children of Hugh Wallis and Martha B. Wallis, and the children of Philip B. Travilla and Ann P. Travilla, should have my real and personal estate, with the above exceptions, equally divided between them and their heirs, forever."

Let us first ascertain the proper construction of the bequest of freedom to the three negro children, as that, in our opinion, will have an important bearing upon the subsequent provision in the will. The testator directs that they shall be free at thirty years of age, if his daughter should die without heir, but if not, they shall serve for life. Is this a gift of freedom upon a contingency so indefinite or remote as to render it invalid, even if the contemplated contingency did happen within a life or lives in being, at the date of the bequest?

We think not. As freedom is a personal privilege which can only be enjoyed by the person to whom it is given, a contingency upon which it is to depend must, necessarily occur within a life in being, when the party intended to be manumitted by the will is in *esse* at the date of the will, as in the present instance.

In *Biscoe vs. Biscoe,* 6 *G. & J.,* 237, where this subject is treated of by Ch. J. Buchanan with his usual ability, it appears that when a devise or bequest is made to take effect after a dying without issue, or without heirs, &c., subject to no other restriction, the limitation is void. But the judge says: "We have also seen that in relation to executory bequests of personal estates, these words may be restricted to mean a dying without issue living at the death of the party, by any clause or circumstance in the will, that can indicate or imply such intention in the testator, and that in order to support the limitation over if they can, courts generally incline to lay hold on any expression or circumstance in the will that seems to afford a ground for such a construction."

That was a case in which a bequest of a negro man was made to J. M. Biscoe, and in case he "should die without lawful heir of his body," then the negro was given to T. H. Biscoe, the plaintiff. As the subject of the bequest would cease with the life of the man bequeathed, for that reason the court construed the dying without lawful heir to mean a definite, and not an indefinite, failure of issue. On page 242, the judge remarks: "If the limitation had been in terms, *if John McKay Biscoe should die without issue in the lifetime of this negro man,* could a doubt be entertained that it would have been good, on the ground of its being made to depend on a contingency to happen within the compass of a life in being, the life of the man himself; and is not the inference, that such was the meaning of the testatrix, as irresistible as if it had been so expressed?"

This remark applies with peculiar force to the case before us, for the negroes could not possibly be entitled to freedom except upon the decease and failure of issue of Mary M.

Mason during their lives. See also 9 *Gill*, 161, *Edelen vs. Middleton.*

Reference has been made to cases in which negro women and their increase have been given by will or by deed, and in which the courts have been induced to construe a dying without issue to mean an indefinite failure of issue; because the issue of the negro women might continue as long as the issue of the first taker. These cases can have no influence upon the question as to the right of freedom under this will. The fact that the female, Elizabeth, might have had issue for several generations, could not, by possibility, procrastinate or delay any claim she could have to freedom beyond the period of her own life. It was as necessary that her right to freedom should take effect during her life as that the second legatee, in the case of *Biscoe vs. Biscoe*, should become entitled to the negro man in his lifetime. We therefore think this first expression, in regard to dying without heir, is to be considered as within the restricted construction applicable to such language, and does not mean an indefinite failure of heirs or issue.

If this be so, it is difficult to see why a like interpretation, so far as relates to the personalty, should not be given to the *same words*, occurring in the very next sentence, which is most intimately connected with the first by the word *but.* The negroes were to be free at thirty if the daughter should die without heir, but if not then they were to serve for life. But if the daughter should die without heir, then the Wallis and the Travilla children were to have the real and personal estate, "with the above exceptions."

That the meaning of the words in the first sentence is to be understood in their restricted sense, is surely a "circumstance in the will that seems to afford a ground for such a construction" in regard to the subsequent sentence, and under the authority referred to the court should lay hold of this circumstance in order to support the limitation over. More especially should we do so as we find the latter sentence concluding in these words, "with the above exceptions."

In these exceptions are included the negro children manumitted, to be free if the daughter should die without heir, which words we have seen are to be taken in their restricted meaning. It would be a strange interpretation of a will to give directly opposite constructions to the same words in two sentences standing in juxta-position, and both relating to personalty, and when the second, in its concluding language, makes direct reference to the first in regard to certain exceptions, part of which were to depend upon the death of the testator's daughter "without heir." In the sentence now more particularly under consideration, the bequest was also made to depend upon the death of the daughter "without heir." When this contingency or event is spoken of, the testator has used precisely the same language in both sentences. And seeing nothing in the last which requires that it should receive a different construction from the first, we think the same interpretation which has been given by us to the first must be applied to the last, as the testator's legal meaning and intention in reference to the personal property; or, more correctly speaking, we should have said in reference to the negroes, for there is nothing to show that there was any other personal property except negroes.

In this view of the subject the judgment below must be reversed, and judgment rendered on the case stated in favor of the plaintiffs.

*Judgment reversed, and judgment for plaintiffs.*