(Decided 11th February, 1870.)

---

ARTHUR J. WALLIS *vs.* JAMES F. WOODLAND and MARGARET, his Wife, and SAMUEL S. CAKE and MARY, his Wife.

*The words " die without heir " as applied to a Devise of Real Estate, construed.*

A testator after devising to his daughter " and her heirs forever," his real and personal property, excepting certain slaves, who were to be free after a term of years, and others whose freedom, when they attained the age of thirty, was contingent upon his daughter's dying without heir, went on to say: " But if my daughter should die without heir, it is my will that the children of Hugh Wallis and Margaret B. Wallis, and the children of Philip B. Travilla and Ann P. Travilla, should have my real and personal estate, with the above exceptions, equally divided between them and their heirs forever." The daughter entered into possession of the land devised, and held it during her life. She died unmarried and without issue, leaving a will by which she devised the land to the appellant and his heirs forever. HELD:

That the words " die without heir," as applied to the devise of the real estate, imported an indefinite failure of heirs or issue, and the contingency being too remote, the daughter took an estate in fee under the will of her father, which she had the right to devise.

A clear distinction in the construction of the words " die without heir," is recognized as applied to devises of real estate, and to bequests of personal property.

Wallis *vs.* Woodland and Wife, *et al.*

APPEAL from the Circuit Court for Kent County.

This was an action of *ejectment* brought against the appellant by the lessee of the appellees, to recover an undivided moiety of a tract of land called "Darnell's Farm," lying in Kent county, and containing one hundred and seventy-five acres.   The usual consent rule was entered into; plea not guilty, and issue joined thereon.   There was an agreed statement of facts.   A *pro forma* judgment was entered for the plaintiff, and the defendant thereupon appealed.   The only question in the case arose as to the construction of the will of John Mason, who died in 1829.   The portion of the will upon which the question arose is set out in the opinion of the Court.   Miss Mason, the only child of the testator, died on the 11th of October, 1843, unmarried and without issue, leaving a will duly executed, by which she devised to the appellant and his heirs forever, the real estate called "Darnell's Farm," devised to her by her father.   The appellees, Margaret Woodland and Mary Cake, the only children of Philip B. Travilla and Ann, his wife, were *in esse* at the time of the execution of the will of John Mason.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER, ALVEY and ROBINSON, J.

*Daniel Clarke* and *Robert J. Brent,* for the appellant.

The will of John Mason clearly devised to his daughter a fee simple in the real estate by apt words of limitation. The only difficulty is occasioned by the engrafting an executory devise over of all the testator's real and personal estate, save as therein excepted.   Was the executory devise over, good and available to defeat or abridge the fee simple estate confessedly devised to Miss Mason?

If this executory devise did not include *personal*, but was confined to real estate, it would be void as dependent on an indefinite failure of issue.   *Nutwell vs. Tongue,* 13 *Md.,* 426, 427.

Unless the association of the descriptions of estate can save the limitation over, so far as the real estate is concerned, the judgment must be reversed.   The association of real and personal property in the same clause of a will does not necessarily cause the construction of the words to be the same as applied to each species of property.   The construction must be " *secundum subjectam materiam,*" and, therefore, the same words in the same clause may have different interpretations, · as applied to different kinds of property.   *Chapman vs. Forth,* 1 *Peere Williams,* 667, 668 ; *Harris vs. Bishop of Lincoln,* 2 *Peere Williams,* 140 ; *Dyer,* 371, *b* ; 1 *Jarman on Wills,* 711 ; *Sheffield vs. Lord Orrery,* 3 *Atkyns,* 288 ; 2 *Vezey,* 180 ; *Posey's Lessee vs. Budd,* 21 *Md.,* 480 ; *Budd, et al. vs. State, use of Posey's Adm'rs,* 22 *Md.,* 55 ; *Fearne on Cont. Rem.,* 96, 97 ; 2 *Jarman on Wills,* 2.

*J. Shaaff Stockett,* for the appellees.

The words in the will of John Mason, " *die without heir,*" referring to his daughter, do not mean an indefinite failure of issue, but a dying without issue living at the time of the death of the daughter, and under and by virtue of the provisions of the will, the appellees are entitled to an undivided moiety of the real estate in controversy.   *Woodland and Wife vs. Wallis, Ex'r of Mason,* 6 *Md.,* 164, 167 ; *Sisson, et al. vs. Seabury,* 1 *Sumner,* 239 ; *Act of* 1862, *ch.* 161 ; *Ware, et al., vs. Richardson,* 3 *Md.,* 505, 544 ; *Redfield on the Law of Wills, Part II,* *p.* 386, sec. 18, *p.* 388, sec. 20, *p.* 389, sec. 22, *p.* 390, *note* 35 ; *Turner, et al. vs. Withers, et al.,* 23 *Md.,* 38, 42 ; *Lewis on the Law of Perpetuity,* 52 *Law Lib.,* 183, 184 ; *Simpers' Lessee vs. Simpers,* 15 *Md.,* 188 ; *Chelton vs. Henderson,* 9 *Gill* 436, 437 ; *De Beauvoir vs. De Beauvoir,* 3 *House of Lords Cases,* 545.

ALVEY, J., delivered the opinion of the Court.

The will that gives rise to the question in this case, was executed in 1826, and admitted to probate in 1829 ; and in it is the following devise to the daughter of the testator, his only child :

"I give and bequeath to my daughter, Mary Matilda Mason, all and singular the property, real and personal, that I now possess, *to her and her heirs forever*, except my negro man, Thomas, and my negro woman, Ann, who, it is my will that Thomas should serve four years and Ann seven years after my death. Also the children, Elizabeth, George and Jarvis, should each of them be free when they arrive at the age of thirty years, if my daughter should *die without heir*, but if not, then the said children to serve for life. But if my daughter should *die without heir*, it is my will that the children of Hugh Wallis and Margaret B. Wallis, and the children of Philip B. Travilla and Ann P. Travilla, should have my real and personal estate, with the above exceptions, equally divided between them and their heirs forever."

The first devisee entered into the possession of the land devised, (a moiety of which being that sued for in this action,) and held the same until October, 1843, when she, by her will, devised the same in fee to the appellant, the tenant in possession and defendant to the action in the Court below. And whether she could rightfully so devise, under the will of her father, is the question in this case. .

In reference to the personal estate, bequeathed in the clause above quoted, the will has been construed by this Court, in the case of *Woodland and Wife vs. Wallis, Ex'r of Mason*, 6 *Md.*, 151, in which it was held, that the gift of freedom to the negroes was not upon a contingency so indefinite or remote, as to render it invalid; the words "*die without heir*," as they applied to such bequest, not being deemed to import an indefinite failure of heirs or issue. But there is a clear distinction in the cases upon this subject, between the rules of construction, as applied to devises of real estate and those applied in bequests of personal estate. In regard to the latter, the Courts incline to pay attention to any circumstance that seems to afford ground for construing a limitation after dying without heirs or without issue, to mean a dying without heirs or issue living at the death of the party, in order

to support the bequest over, though, as to real estate, the construction is generally otherwise; for, in the latter case, the interest of the heir is involved, which is always favored. And hence in the construction of the will before us, in the case reported in 6 *Md.*, 151, the circumstances that the negroes were *in esse* at the date of the will, and freedom being a personal privilege to be enjoyed only by the person to whom it was given, justified the conclusion that the contingency upon which the gift over depended must necessarily happen, if at all, within a life in being, and therefore good as an executory bequest.

This diversity in the application of the rules of construction, depending upon the nature of the estate devised, has long existed and been repeatedly recognized and acted on by Courts of the highest authority.

In *Forth vs. Chapman*, 1 *P. Williams*, 663, one of the earliest cases in which the distinction was clearly taken, the devise was of both real and personal estate to A and B, and if either should depart this life, and leave no issue of their respective bodies, then a devise over of the leasehold property. The MASTER OF THE ROLLS held that the devise over of the personal estate was void, as being upon an indefinite failure of issue; but, on appeal to the LORD CHANCELLOR, the decree was reversed, and he held that there was a clear distinction to be observed between an executory devise of real and personal estate; as to the freehold, said he, "the construction should be, if William or Walter died without issue *generally*, by which there might be *at any time* a failure of issue; and with respect to the leasehold that *the same words* should be intended to signify their dying without leaving issue *at their death.*" And of the many cases recognizing this well established distinction, there are none more unequivocal in their full adoption of the principle of *Forth vs. Chapman*, than those of our own Court of Appeals, as will be seen by reference to *Newton vs. Griffith*, 1 *Har. & Gill*, 111; *Posey's Lessee vs. Budd*, 21 *Md.*, 477; *Budd vs. Posey*, 22 *Md.*, 48.

Such distinction being well established, it is clear that the construction placed on the will before us, in respect to the personal property, does not, necessarily, furnish the proper criterion for determining the rights of the devisee to the real estate, although the real and personal estate be limited over by the same words.

By the devise, the real and personal property of the testator is given to his daughter, "*to her and her heirs forever*," thus using apt and appropriate words to convey a fee in the realty, and in the devise over it is upon the event that she "should die without heir."

It will be observed that the limitation of the estate over is dependent on the first devisee dying without heir general in the singular. This, however, does not differ from the case of a devise over limited, to take effect on the dying without heirs general, in the plural, the word "heir" in such case being taken in a collective sense, as comprehending any number of persons who may happen to answer the description. 2 *Jarm. on Wills,* 2; *Burchett vs. Dundant, Skinn.,* 205; 4 *Russ. Ch. Rep.,* 384.

Reading, then, the devise over as being dependent upon the first taker dying without heirs generally, is the limitation such, by the established principles of construction, as will be allowed and sustained by law?

It is the uniform language of all the authorities treating of the subject that an executory devise, unlike a remainder, requires no particular estate to support it, and that it may be limited in restriction of a previous fee, provided it be made to depend upon a contingency that *must* happen, if at all, within a life or lives, in being, and twenty-one years and a fraction afterwards. This is the utmost limit to which property can be tied up by an executory devise; and if it be limited on an event that *may not* happen within the time prescribed, as upon an indefinite failure of issue, or the general failure of heirs, it will be vicious from the beginning, without regard to the fact as it may subsequently occur.

As by the disposition of a fee simple, the entire estate of the devisor is parted with, he cannot so limit a second fee as to make it expectant on the determination of the first. Hence the familiar examples of void executory devises given us by Mr. FEARNE, in his work on Contingent Remainders and Executory Devises, that where lands are devised to A and his heirs, and if A die without heir then to B, this limitation to B is absolutely void. So where A devised to J. B and his heirs forever, and if J. B should die without any heir, then he devised the estate to C; this limitation to C is void, because too remote. *Fearne on Cont. Rem. and Ex. Dev.*, 445.

In these examples we have the test of the present case. The devise was to the daughter in fee, with a limitation over dependent upon an uncertain event, the extinction of all the heirs of the first devisee. The dying without heirs, the event upon which the estate over was to take effect, means an indefinite failure of heirs, and therefore has no fixed or definite period within which to happen; there being nothing on the face of the will, in respect to the realty, that restricts the failure of heirs to the period of the death of the first devisee. Such an executory devise is void, because the contingent event upon which it is made dependent is too remote; though otherwise as to the personal property, because of the nature of such property, and that the limitation over in regard to it could not have been intended for the benefit of the heirs, as they could not, by any construction, take it.

Nor is the result different by supposing the limitation over to be to relations of the first devisee, and those who are capable of being collateral heirs to her, so as to cut down the previous devise in fee to an estate tail, by showing that none but lineal heirs or issue of the body were intended. For, in such case, the statute abolishing entails, converts the estate tail general into a fee simple, so that the devise over is equally void as if limited on a previous estate in fee. *Newton vs. Griffith*, 1 *Har. & Gill*, 111.

This Court being of opinion that Mary M. Mason was, at the time of her death, seized of a fee simple estate in the land

in controversy, and therefore capable of devising the same to the appellant in 'fee, the judgment of the Court below will be reversed, and judgment entered for the appellant, in accordance with the agreed statement and submission.

*Judgment reversed and*

*judgment for the appellant.*

(Decided 15th February, 1870.)