WILLIAM H. GABLE and BENJAMIN F. GABLE *vs.* GEORGE W. ELLENDER and Others.

*Construction of a Will—Definite Failure of Heirs.*

In the will of E., which was admitted to probate in 1862, is the following clause: " I give and bequeath to my daughter E. G. the wife of H. G., my brick house and lot fronting on Madison street

during her life, and at the death of the said E. G., it shall descend to S. J., her daughter, and to her heirs forever, and should the said S. J. die without heirs it shall then descend to my children then living, and be equally divided between them, share and share alike." This was leasehold property. E. G. survived her husband and died in 1874, leaving the said S. J. and two sons, the appellants. S. J. died intestate without issue in 1877, leaving her husband surviving her, who surrendered possession of the property, (which had been successively held by E. G. S. J. and her husband,) to one of the appellees. E., the testatrix at the time of her death left eight children living and *in esse* when the will was made, four of whom, the appellees, survived at the time of S. J's death. In an action of ejectment brought by the appellants against the appellees to recover possession of the property, it was HELD:

That as S. J. had no heirs of her body living at the time of her death, the appellees took the property.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ROBINSON and IRVING, J.

*James H. Gable,* for the appellants.

*A. F. Musselman* and *E. O. Hinkley,* for the appellees.

IRVING, J., delivered the opinion of the Court.

The appellants brought ejectment in the Superior Court of Baltimore City, against the appellees to recover possession of a house and lot on Madison street, in the City of Baltimore. The case was submitted to the Court without the intervention of a jury. A *pro forma* judgment was entered for the defendants and appeal taken to this Court. The property sued for is leasehold property, and the appellants' right to recover depends upon the construction

of the fourth clause of the will of Charity Ellender. The will is dated the 9th day of January, 1860, and the clause giving rise to this controversy is as follows: "I give and bequeath to my beloved daughter, Eliza Gable, the wife of Henry Gable, my brick house and lot fronting on Madison street, during her life, and at the death of the said Eliza Gable, it shall descend to Sarah Jane Gable, her daughter, and to her heirs forever, and should the said Sarah Jane Gable die without heirs, it shall then descend to my children then living and be equally divided between them, share and share alike." The testatrix died December 31, 1861, and the will was admitted to probate on the tenth of January, 1862. Eliza Gable, the first taker, died January 18th, 1874, leaving the said Sarah Jane Gable, her daughter, who is referred to in the will, and the appellants, William H. Gable and Benjamin Gable, her sons, surviving her. These persons were her only children, and her husband had died before she did. Sarah Jane Gable, died intestate on the 7th of June, 1877, without any child or descendant, leaving her husband, John J. Jones, surviving her. It is admitted that Sarah Jane and her husband had possession of the property from the death of Eliza, until the death of Sarah Jane, when her husband surrendered possession to George W. Ellender, one of the defendants. It is also admitted that the testatrix at the time of her death left eight children living, all of whom were living and *in esse* when the will was made. It is also admitted that at the time of the death of Sarah Jane, only four of the children of the testatrix were living, namely, George W. Ellender, Mary Ann Ellender, Julia A. Wilcox, and Amanda Clark. It is also admitted that those children who are mentioned in the will as to take if living at the death of Sarah Jane, in the contingency named, were living and *in esse* at the date of the will of the testatrix.

The appellants admitting the devise over to be a good and valid executory devise, contend that the contingency

mentioned and provided for has not happened, because
Sarah Jane has left the appellants as her heirs, and they
claim as such; that the word *heirs* is to be taken in its
technical sense, and as applied to personal property it
means that persons who would take by the Statute of
Distributions.    The appellees contend also that the limita-
tion over is a good executory devise in law, but insist that
by the proper construction of the will the word *heirs* is to
be taken to mean *heirs of the body*, and that there is lan-
guage in the will which is quite sufficient to restrict the
failure provided for by the testatrix to a failure of such
heirs at the death of Sarah Jane Gable; and that Sarah
Jane having died without such heirs, the contingency has
arisen whereby the children of the testatrix, who were
living at Sarah Jane's death, are by the will to take the
property.

   From an early period in England, and always in this
country and State, in the construction of wills, Courts have
adhered to the technical meaning of the word " heirs "
and " isssue," much less rigorously, when the devise over
on the failure thereof was made, when the devise was of per-
sonal estate, than when of real estate.    In the same will
where both real and personal estate were devised over on
the failure of issue or of heirs, the words have been held
to import indefinite failure when applied to real estate, and
to mean a definite failure when applied to the personalty,
by reason of some expression in the will on which the
Court in the one case, felt justified in relying as indica-
tive of the intent of the testator, and not in the other.
This originated no doubt in the more permanent and
enduring character of real than personal estate, and the
natural presumption that the testator did not intend, as to
anything destructible in its character, to provide against
the indefinite failure of issue in the intended taker thereof.

   The doctrine of *Forth vs. Chapman*, 1 *P. W.*, 663, has
been accepted law in this State, and it has been so adjudi-

cated in many reported cases. *Dallam vs. Dallam,* 7 *H. & J.,* 220 ; *Newton vs. Griffith,* 1 *H. & G.,* 117 ; *Biscoe vs. Biscoe,* 6 *G. & J.,* 232 ; *Budd, et al. vs. State, use Posey's Adm'rs,* 22 *Md.,* 48 ; and *Woodland vs. Wallis,* 6 *Md.,* 151. The rule now is, that the Court will, in cases of the devise of personal property, seize upon any circumstance, however slight, that gives any ground for supposing the testator meant the words used to indicate a dying without issue, then living at the death of the taker, to whom the words are applied. In *Biscoe vs. Biscoe,* a negro man being the subject of the bequest, the Court thought and held that it was apparent the testator intended the contingency to happen in his life, therefore the meaning was restricted accordingly.

So also in *Woodland vs. Wallis,* 6 *Md.,* 151, for the same reason the Court held the failure to be restricted to the death of the first taker, and having determined that to be the meaning in the case of the negro, they held that the same language being used with reference to the other personal property, the same intention must be held to exist, and the words used with the same meaning, so as to make the failure of heirs a definite one, and the limitation over good. It is well settled, however, that unless there be words in the will to explain and restrict the legal import of the words dying "without heirs," or "without issue," or the like expressions, the limitation over on such a contingency is void, both as to real and personal estate; "and in no case would it be good, unless made to depend on a contingency that must happen within a life or lives in being, and twenty-one years and a few months thereafter; (*Budd's Case,* 22 *Md.,* 48.) except as to cases covered by the Act of 1862. In this case, it is a concession of counsel, that the devise over is good. If that be so, then an indefinite failure of heirs has not been intended in the clause of the will under consideration. It is admitted, that if the decree over was void, the appellants would

have no title because being personal property, in that case Sarah Jane having taken the absolute estate, on her death without issue of her body, her surviving husband would take under the Statute. The appellants therefore depended on the devise over being good, and to be good, necessitates the giving to the word "heirs," on the failure of which the devise over is made to depend, a meaning which defeats their claim. It is very clear from the context, that the testatrix used the word "heirs," in the sense of "heirs of the body," or "issue of the body," and that it was upon the failure of such issue at the death of Sarah Jane Gable, that she intended her own children then living to take the property. The will shows that at the time of making the will, she had seven living besides Eliza, the first devisee of this property, and that the defendants or appellees in this case were then living. It is very evident, that the testatrix contemplated that the contingency of Sarah Jane, "dying without heirs," should occur in the life of these children or some one of them, and that the survivors of them were to take and not the children of those who were dead; because she limits the property over to such of her children as should *then be living,* and it is to be then divided equally among them— that is among such as were then living. It is apparent from the record, that at the date of the will, these appellants, the sons of Eliza Gable, were then living; yet the testatrix passed them over, and gave the property on the death of the mother to their sister, and then in the contingency named made the property to go to her surviving children, and not to these appellants. The testatrix manifestly intended to give to Sarah Jane Gable, an estate which would pass to the heirs of her body, if she had any, but if she should die without such heirs living at her death, it was her desire that her own children then living should have the property. The devise over to her own children, not all, but only to such as should be

living, when the contingency named should happen, indicates quite as clearly that she intended to provide for a definite failure,—that is a failure of her heirs of her body at the time of her death—as did the fact that the subject of the devise was a negro in *Biscoe's Case,* and expected to be living when the contingency should occur. In the one case it was a living negro devised, in the other the bequest over is to persons living when the will was made and expected to be living when the devise over was to take effect. It is beyond doubt, that this testatrix intended to fix the limitation over on a contingency, that if it should occur, would occur within a definite period, "not repugnant to the general policy of the law." To carry out the patent intention of the testatrix, we must hold the word *heirs* to mean heirs of the body ; and so holding, we must, on the authority of the cases cited, decide that as Sarah Jane Gable had no heirs of her body living at the time of her death, the children of the testatrix, who were living when Sarah Jane died, took the property under the limitation over to them. The judgment will be affirmed.

*Judgment affirmed with costs.*

(Decided 12th March, 1880.)