## Thomas Kayton Biscoe vs. Langley Biscoe.— December, 1834.

A by her will devised as follows: "I give unto my nephew J, my slave *Samuel;* in case the said J should die without lawful heir of his body, I then give the said slave *Samuel* to my nephew T." Held, that this limitation over to T; being of a *man* slave, was not too remote, and therefore not void.

In relation to executory bequests of personal property dependent upon a dying without lawful heir, or leaving issue, &c., the language of the will may be restricted to mean a dying without issue living at the death of the first taker or another person *in esse*, by any clause or circumstance in the will, that can indicate such intention in the testator; and in order to support the limitation over, the courts, in such cases, generally incline to lay hold on any expression or circumstance in the will, that sems to afford a ground for such a construction.

So when the subject of the bequest was *a negro man*, a life in being, and the limitation over could never by possibility take effect, but in his life-time, as the term of the servitude must expire with his life, this was held to be a circumstance indicating the intent of the testator, which would qualify a limitation over, otherwise too remote, and void upon general principles.

APPEAL from *Saint Mary's* county court.

This was an action of *Replevin*, instituted by the appellant against the appellee, on the 25th of November, 1831, for a negro slave named *Samuel;* the title to whom depend-

ed upon the following clause in the will of *Anna Biscoe*, dated 8th March, 1824, and proved on the 11th of May, of the same year.

"Item, I give and bequeath to my nephew *John McKay Biscoe*, my slave *Samuel;* in case the said *John McKay Biscoe* should die without lawful heir of his body, I then give the said slave *Samuel*, to my nephew *Thomas Kayton Biscoe*," (the plaintiff in this action.)

The title of the testatrix to the negro was proved; and that *John McKay Biscoe* died in July, 1831, without ever having had a child.

Upon this proof, the county court, (STEPHEN, Ch. J.) upon the prayer of the defendant, instructed the jury, that the limitation over to the plaintiff was void. The plaintiff excepted to the instruction, and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, Ch. J., and DORSEY, and CHAMBERS, J's.

*John M. S. Causin*, for the appellee, contended,

1. That the intention of the testator as displayed upon the face of the will, furnishes the rule for expounding devises, unless such intention is opposed to some principle of law. 2 *Bur.* 1106, 1112. 1 *Ib.* 50, 51.

In this case it is impossible to suppose the testator intended the limitation over should take effect, after an indefinite failure of issue. Long before that event would happen in the ordinary course of nature, the slave, the subject of the bequest, must die. If the limitation over take effect at all, it must do so in the life-time of the slave, and this must have been known to the testatrix. The testatrix intended, that if the first taker died leaving issue at the time, the limitation over should fail. She could not, when disposing of a human being, whose life is limited by the laws of nature, have looked to an indefinite failure of issue.

In bequests of personal estate, the words, dying without issue, mean a definite failure of issue. 1 *Pr. Wms.* 534, 667. 3 *Ib.* 260. 13 *Ves.* 340. 1 *Harr. and Gill,* 111, 116. 4 *Harr and Johns.* 441. *Fearne,* 224, 225. The rule that words, which will give an estate tail in real estate, will give an absolute estate in personalty, does not apply here; as if the first taker under this will take an estate tail, it is by implication, and the rule only applies to estates tail created by express terms. 3 *Pr. Wms.* 259.

*Johnson* for the appellee.

The limitation over to the plaintiff is too remote, and is not good, as an executory bequest.

The question is not whether the estate must take effect within the prescribed time, but whether the *contingency* upon which it is made to depend, must happen within the limited period. *Dallam vs. Dallam,* 7 *Harr. and Johns.* 220. 1 *Harr. and Gill,* 111. *Hoxton vs. Archer,* 3 *Gill and Johns.* 199.

Looking alone at the first part of the clause of the bequest in question, and the first taker would have an absolute estate; and the enquiry is, whether the words afterwards employed, mean that, that estate should be defeated by a definite failure of issue.

In the case of real estate, the devise over being for life, or to a survivor, will not make the limitation good, if it is made to depend upon an indefinite failure of issue. There must be some term, such as *"leaving issue,"* to limit the general terms of the devise. The limitation over to the plaintiff, is of an absolute estate; as much so, as though the slave had been given to him and his heirs, upon the occurrence of the contingency of the first taker dying without heirs of his body, and there is nothing to prevent its taking effect, even if the plaintiff had died before the death of the first taker, and in that event his representatives would be entitled. 4 *Harr. and Johns.* 441. 2 *Harr. and Gill,* 42,

125.  The words used by the testator, are technical, and must be construed technically.

Buchanan, Ch. J., delivered the opinion of the court.

It is a well known and inflexible rule, which hardly needs to be stated here, that no limitation can be good and operative as an executory devise, unless it be upon a contingency that must happen, if at all, within a life or lives in being, and twenty-one years, and a portion of a year afterwards, allowing for the time of gestation; and that if it be upon an event, or contingency, which *may*, or *may not* happen within the prescribed limits, that the limitation is void *ab initio*, and cannot take effect, notwithstanding the event should afterwards in fact occur within the time allowed by the rule for the happening of a contingency, on which an executory devise may be limited : the ingredient, *that it must happen*, (if ever) within the limits which the law prescribes, and not that it *may*, or *may not* happen, being wanting to the validity of such executory estates.

The rule being, not that the *limitation over* is to take effect within the time allowed, but that the *contingency* on which it is made to depend, *must happen*, if at all, within the prescribed limits.   This rule applies as well to executory bequests of personal property, as to executory devises of real estate.   With this difference in the practical application of it, remarked upon in *Dallam vs. Dallam, 7 Harr. and Johns.* 220, and *Newton and Griffith,* 1 *Harr. and Gill,* 111, that in relation to personal estates, courts generally incline to pay attention to any circumstance, or expression in the will, that seems to afford a ground for construing a limitation after dying without issue, &c., to be a dying without issue, living at the death of the party, in order to support the bequest over; but that in the case of real estates, the construction is generally otherwise, in favor of the heir whose interest is concerned, which is always much favored by the law. *Fearne on Remainders,* (by Butler) 476, which is exemplified in *Forth vs. Chapman,* 1 *Pr. Wms.* 663; where the

testator gave the residue af his real and personal estate to his two nephews generally, with a limitation over to another, in case either of them should die and *leave no issue of his body.*

There was a disposition for life in the same clause of a will of real and personal property, with a limitation over on the event of a dying without *leaving* issue; and it was held, that the devisees of the freehold, took an estate tail, the contingency being too remote to support an executory devise, and that the limitation over of the *personal* estate, was good by way of executory bequest, by force of the word *leave.* The words *leave no issue,* when applied to a disposition of *personal property,* being construed to mean a failure of issue at the time of the death of the first taker; and when applied to a disposition of *real estate* to mean (in favor of the heir) an indefinite failure of issue, which seems to be an almost imperceptible shade of distinction. It has, however, become a settled rule of construction. But "*Lex plus laudatur, quando rationi probatur.*"

The distinctions too, in relation to executory limitations of personal property, between dying *without* issue, and dying without *leaving* issue, appear to be very subtile; seeing that if the reason for the avidity of courts to seize upon slight circumstances to support such limitations be, (as is sometimes said,) that the issue of the first legatee can under no construction take; the same reason applies as well to the former, as to the latter set of words. Still it has become a settled distinction not now to be overturned. For it is the established law, that whenever an executory devise, or an executory bequest, is limited to take effect after a dying without issue, or without heirs, &c., subject to no other restrictions, the limitation is void. The rule being in relation to personal property, that if the limitation be, after a dying without issue, &c. generally, without the concurrence of any other circumstance of intention, those words shall not, *ex vi termini,* signify a dying without issue then living; but if the limitation rests solely upon the usual in-

tent and import of those words, the limitation over is too remote, and therefore void, and the whole vests in the first legatee; and that on the other hand, when there is any other circumstance of intention, these words shall not *ex vi termini*, import an indefinite failue; but that the signification of those words may be confined to a dying without issue then living, by any clause or circumstance in the will, which can indicate or imply such intention, (*Butler's Fearne on Remainders*, 485,) and effect be thus given to the limitation over. And it matters not whether the estate be limited to the first legatee indefinitely, or for life expressly, or such legatee and his heirs or heirs of his body, or issue, or children, the restriction is equally valid. *Ib.* 478, 479. In this case, the words of the will are, "I give and bequeath unto my nephew *John McKay Biscoe*, my slave *Samuel*; in case the said *John McKay Biscoe* should die without lawful heir, I then give the said slave *Samuel*, to my nephew *Thomas Kayton Biscoe. John McKay Biscoe* died without having ever had any issue; and the question upon the construction of the will is, whether those words "die without lawful heir of his body," mean *an indefinite*, or a definite failure of heirs of his body.

If the limitation over is to be considered as resting entirely upon the usual extent and import of those words, as settled in legal understanding, there can be no question that it is too remote, and therefore void, and that the whole property in the negro vested absolutely in *John McKay Biscoe.*

We have seen the rule to be, that the *contingency* on which the limitation is made to depend, must happen, if at all, within the prescribed limits; and that if an executory devise or bequest, be limited to take effect after a dying without issue, or without heirs, &c. subject to no other restriction, the limitation is void. But we have also seen, that in relation to executory bequests of personal estates, those words may be restricted to mean a dying without issue living at the death of the party, by any clause or cir-

cumstance in the will, that can indicate or imply such intention in the testator, and that in order to support the limitation over if they can, courts generally incline to lay hold on any expression or circumstance in the will, that seems to afford a ground for such a construction; as appears by the construction given to the expressions, *leaving* no issue, or without *leaving* issue, &c. when used in a limitation of *personal* property, though in the same clause of a will, making a disposition of both *real* and *personal estate.* So that, although the *contingency* on which the limitation is to depend, is required to be such as must happen, if ever, within certain prescribed limits; yet whether that be the character of the *contingency*, depends upon the sense in which the testator, from any clause or circumstance in the will, is supposed to have used the expressions, *dying without issue, &c.*

If the limitation rests solely upon the received import of these words, subject to no other restriction arising from any expression, or circumstance of intention, the testator is to be supposed to have meant an *indefinite* failure of issue; but if on the other hand, there is any clause or circumstance in the will, which can indicate or imply, that he intended a dying by the first legatee without issue then living, or a definite failure of issue, the words may be so construed, and the limitation restricted to that event.

Is there any such clause, or circumstance of intention in this will? It has been held, that a limitation over for *life* to one in *esse*, after a dying without issue, may be good. *Butler's Fearne*, 488, 489. *2 Thos. Co. Litt.* 648, 649. *(note C.)   Lyde vs. Lyde*, 1 *Term. Rep.* 593.   *Trafford vs. Boehm*, 3 *Atk.* 449.   Because the future limitation being only for *life*, of one in *esse*, it must take effect during that life or not at all, and therefore the failure of issue in that case, is confined to the compass of a life in being.   The circumstance too, of an executory bequest being for *life*, to one in *esse*, and therefore must take effect if at all during his life, is supposed to be a concurring circumstance to

indicate that the testator intended a definite failure of issue; a circumstance of intention in the will.

But of the cases to be found in the books, that which perhaps comes as near to this as any other, is the case of *King vs. Cotton*, 2 *Pr. Wms.* 676, in which there was a demise by a *tenant for life of land*, to trustees, for ninety-nine years, if she should so long live, in trust for herself during her widowhood; and after marriage, in trust for her second son and the heirs of his body, and if he should die without issue, then in trust for her third son; and *Fearne*, *(by Butler)* 489, in his notice of that case, treats the limitation over of the trust for the third son, as a good limitation. Because it could not possibly take effect, unless in the life-time of the tenant for life of the land, the whole term being to determine on her death, and there could be no perpetuity. That was a demise of a term in trust, but executory devises and limitations of the trusts of a term, are governed by the same rules.

In that case, it is to be observed, that as the term, the thing given, was necessarily to expire with a life in being, it may reasonably be inferred from that circumstance, that a dying without issue during the continuance or existence of the term, the thing given, or in the life-time of the tenant for life, was intended, and not an indefinite failure of issue; thus restricting the words *without issue*, to mean a failure of issue within the compass of a life in being.

In this case, the subject of the bequest, the thing given, is a negro man, a *life in being*, and the limitation over could never by possibility take effect, but in his life-time. May it not therefore be a reasonable construction, to confine it to a failure of issue during a life in being, the life-time of the negro man himself, the subject of the bequest? Looking to the circumstance that the subject of the bequest is a slave, whose term of servitude must expire with his life, as a circumstance inconsistent with the supposition of an *indefinite* failure of issue, and therefore indicating that such was not the intention of the testatrix, but that she meant to

restrict the limitation over to a failure of issue, suitable to the durability of the subject of the bequest, that it is to a dying by the first legatee without issue, in the life-time of the negro man.

We have seen that executory bequests limited to take effect after a dying without issue, &c. may be good, and those words construed to mean, a definite failure of issue, by means of expressions and circumstances in the wills, not stronger certainly than that which characterises this.

There has been no case adjudged in *England* exactly like this, there being no such description of property in that country; but it is apprehended, that if such a case had ever arisen there, the limitation over would have been held to be good.

Nothing can be more improbable, than that the testatrix meant an indefinite failure of issue; as she must have intended by the limitation some benefit to the legatee over, which she well knew could not possibly be, unless there should be a failure of issue of the first legatee, during the life of the negro man, he being the subject of the bequest. It is therefore only consistent with reason to suppose, that she intended such a failure of issue; and if so, and the character of the subject of the bequest can be taken as a circumstance in the will, to indicate such an intention, there is no rule of law to forbid that construction, in support of the limitation over, the character of the contingency (whether definite or indefinite) being to be judged of and determined, by any circumstance of intention to be found in the will. And here, the testatrix knew, that unless the first legatee should die before the negro man, having no issue alive at the time of his death, that the limitation over could never take effect. She must therefore have intended such a dying. It is the only reasonable construction that can be put upon the bequest; and the circumstance pointing to that intention, indicates it quite as strongly as the word *leaving*, which is held to be sufficient to support an executory limitation of personal property.

It will not be contended, and there is surely no principle of law to sustain the proposition, that no limitation of personal property after a dying without issue, &c. can be valid and effectual, unless it be after a dying without issue then living of the first legatee. A limitation may be after a failure of issue of the first taker, in the life-time of another in *esse*, or after a dying within twenty-one years, after a life in being.

In *Pells vs. Brown, Cro. Jac.* 590, which, by the way, was a devise of *lands* by a father, to his son *Thomas* and his heirs, and if he died without issue, living *William*, then over to *William* and his heirs, it was adjudged, that the limitation over to *William* was good as an executory devise, on the ground that the words, *without issue*, as there used, were explained and restricted by the words, *living William*, to mean a dying by *Thomas* without issue in the *life-time of William;* and that case is the foundation of this branch of the law.

So, where there was a devise to a woman for life, and after her death, to such child as she was supposed to be *enceinte* with, and the heirs of such child, with a limitation over, if such child as should happen to be born, should die before the age of twenty-one years, it was held to be a good executory devise, as it was to commence within twenty-one years after a life in being, and that if the contingency of a child being born never happened, then, that the limitation was to take effect on the death of the woman. *Gulliver vs. Wichett*, 1 *Wils.* 105. *Butler's Fearne*, 396. *Smith vs. Hallock*, 7 *Taunt.* 129, 140.

Here, the bequest is substantially of a negro man, and if the first legatee should die without issue, living the man, or in the life-time of the man himself, (a life in being) then over. Not very different it would seem, from the case of *Pells vs. Brown*, where the limitation was, after a dying without issue, *living William*. The cases in the *English* books in which limitations after a dying without issue, &c. have been held to be bad, are cases in which the subjects of

the devises would, (being of lands,) or of the bequests, (being of personal property,) might continue to exist beyond the limits prescribed for such limitations. But not so here, where the subject of the bequest must cease to exist with the life of the man bequeathed.

If the limitation had been in terms, *if John McKay Biscoe should die without issue in the life-time of this negro man,* could a doubt be entertained that it would have been good, on the ground of its being made to depend on a contingency to happen within the compass of a life in being, the life of the man himself; and is not the inference, that such was the meaning of the testatrix, as irresistible, as if it had been so expressed.

Our attention has been called to the case of *Johnson vs. Negro Lish,* 4 *Harr. and Johns.* 441, decided by this court, which it was supposed must govern this. But it will be seen that that is a materially different case. That was the case of a deed of gift, in which the limitation was of a woman and *her issue,* after a dying without issue, a circumstance taken notice of by the judge who delivered the opinion of the court, and which looks to an indefinite failure of issue, as the issue of the negro woman might continue as long as the issue of the first taker.

There is also another case, *Davidge vs. Chaney,* 4 *Harr. and McHen.* 393, which was indeed the case of a will, but there too, the limitation was of two negro women and their issue.

This opinion has been extended further than was at first contemplated, or was perhaps necessary, but being a new question in this State, it has been thought proper to examine it more fully, than otherwise would have been done.

**JUDGMENT REVERSED AND PROCEDENDO AWARDED.**