# Ann Tongue's Lessee, *vs.* George W. Nutwell.

A testator devised certain *real* and *personal* property to his son, *in trust* for the sole and separate use of his daughter, during the life of her husband, and then provided, that in case his daughter should die *before* her husband, and "*without leaving issue*," all the property, real and personal, should go to his son and his heirs; but in case his daughter should die *before* or *survive* her husband, "*leaving issue*," then he devised all the property to "*such issue and their heirs* as tenants in common;" but in case his daughter "should die *without leaving issue*," then he gave the

*real* estate to his son and his heirs; and in case his daughter should survive her husband, then the *trust* was to cease and the *legal* estate to vest in his daughter, "for and during her natural life as regards the *real* estate, and *absolutely in fee* as respects the personal property, and after her death, in case she *leave issue,* that then such issue shall have a legal estate in fee in the said real property, and *on failure of such issue,* then to vest in" his son and his heirs. HELD:

1st. That this will manifests a *clear intention* to give the property to the daughter for life *only,* and then to her *issue* if she should leave any, "*issue*" being here a word of *purchase* and not of *limitation,* and the daughter therefore took but a *life estate* only in the *realty.*

2nd. The devise over of the real estate to the son is void, because *too remote,* being after an *indefinite* failure of issue.

3rd. The devise over being *void,* the *real estate* on the death of the daughter without children, descends to the *heirs at law* of the testator, and does not pass to the *residuary devisee* under the will.

The *rule in Shelley's case* has been long recognised and adhered to, both in England and in this State, and the case of *Chelton vs. Henderson,* does not exclude its operation in the interpretation of a will, to any greater extent than to hold that, where the intention of the testator to create no larger estate in the first devisee than for life, *is clearly expressed by the will,* such *intention must prevail.*

There is no valid distinction between the case of a *lapsed* devise and the case of a *devise void* by the rules of law, in regard to the question, whether the *heir at law* or the *residuary devisee* should take the estate; in either case the heir at law takes.

APPEAL from the Circuit Court for Anne Arundel county.

*Ejectment,* for part of a tract of land called "Holly Hill Farm," situate in Anne Arundel county, brought on the 2nd of April 1855, by the appellant against the appellee. The will of Benjamin Harrison, executed on the first of September 1825, and admitted to probate on the 10th of November of the same year, upon the construction of which this controversy arose, describes the land in dispute as "one hundred and forty-seven acres of land, to be laid off from the north end of my dwelling plantation, so as to include the dwelling house with the other buildings about it, and to include also at least one of the tobacco houses." Plea, *non cul.*

*Exception.* The clauses of the will, the facts of the case, and the instructions prayed for on both sides, are fully stated in the opinion of this court. To the ruling of the court,

(BREWER J.,) in granting the defendant's prayer, and refusing those of the plaintiff, the latter excepted, and the verdict and judgment being in favor of the defendant, appealed.

*Note.* The decision of the court below was, by consent of counsel, made without argument, and was *pro forma* merely.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Wm. H. G. Dorsey* and *Thos. S. Alexander* for the appellant, argued:

1st. In order to sustain this judgment it is necessary to assume, that Eleanor Stephenson took, under this will, no more than a *life estate* in the premises devised to her, and that if she had left issue the fee would have vested in such issue as *purchasers*. Now, supposing this construction, sustained as it is by the case of *Chelton vs. Henderson,* 9 *Gill,* 432, to be the true one, it is then insisted, that the limitation over to John Harrison, was to take effect, only in the event of an *indefinite failure of issue* of Eleanor Stephenson, and was therefore *too remote*. The limitations over to John Harrison, are, 1st, "in case my said daughter should die *before* her said *husband* and *without leaving issue;*" 2nd, "in case my said daughter should die before or survive her said husband, *leaving issue,*" then "to *such issue* and *their heirs,* as tenants in common, but in case my said daughter should die *without leaving issue,*" then over to John Harrison, and 3rd, in case my said daughter should survive her said husband, then the trust is to cease and the legal estate to vest in the daughter, *for life* as to the *realty,* and absolutely in fee as to the personalty, "and after her death in case she leave issue, that then such issue shall have a legal estate in fee in the said real property, and on *failure of such issue,* then to vest in my said son John and his heirs forever." From these provisions it is clear, the testator did not intend that John Harrison should have any interest in the land, so long as *issue* of his daughter to the remotest generation survived. The devise to him is an *executory devise.* It cannot take effect as a *contingent remainder,* because there is no par-

53     v. 13.

ticular estate to support it, for he is to take only after an estate *in fee*, in the issue of Mrs. Stephenson. As an executory devise it is *too remote*, being after an *indefinite failure* of issue. 4 *Md. Rep.*, 11, *Torrance vs. Torrance.* 1 *H. & G.*, 111, *Newton vs. Griffith.* 5 *G. & J.*, 87, *Hill vs. Hill.* 4 *Taunt.*, 312, *Doe vs. Gunniss.* 20 *Eng. Law & Eq. Rep.*, 234, *Cole vs. Goble.* 40 *Eng. Law & Eq. Rep.*, 541, *Biss & Wife vs. Smith.* 12 *East.*, 253, *Tenny vs. Agar.* 2 *Jarman on Wills*, 340, citing the case of *King vs. Burchell.* 3 *G. & J.*, 199, *Hoxton vs. Archer.* 3 *Gill*, 83, *Clagett vs. Worthington.* *Ibid.*, 492, *Watkins vs. Sears.* 3 *Md. Ch. Dec.*, 36, *Usilton vs. Usilton.* *Ibid.*, 91, *Roser vs. Slade.* *Ibid.*, 257, *Jackson vs. Dashiel, et al.*

2nd. If the above position is correct, and the limitation over to John Harrison *void*, because of being too remote, then it is insisted, that the *whole of the land* in controversy is now vested in the appellant as *sole residuary devisee*, under the *residuary* clause of the will. Where a devise or a legacy *lapses*, it is conceded, that it does not pass under the residuary clause, but the rule is different where the devise is *void*; in such a case it passes by the residuary clause. 1 *Jarman on Wills*, 587, *et seq.*, and cases there cited. 13 *East.*, 526, *Doe vs. Sheffield.* 3 *Maule. & Selw.*, 300, *Doe vs. Scott.* 1 *Harrington*, 524, *Ferguson vs. Hedges.* 5 *Pick.*, 528, *Hayden vs. Inhabitants of Stoughton.*

3rd. But if the above positions are not correct, it is then insisted, that the limitation to the issue of Mrs. Stephenson, coalesced with her life estate, and her interest was thereby virtually enlarged to a fee simple, and on her death without issue such estate descended to John Harrison and the appellant in equal moieties. The rule in *Shelley's Case* is still the law of Maryland, and has not been shaken by the decision in *Chelton vs. Henderson.* There are stronger reasons why it should be liberally applied in this country, than in England, for the effect of its application in England, is to give the estate to *one*, whilst by our laws the effect of its operation would be to distribute the estate equally among all the children and heirs of the first taker, in case he died intestate.

*C. McLean*, for the appellee, argued that the judgment ought to be affirmed:

1st. Because the will clearly shows the intention of the testator, that the dying without issue was to be confined to the *time of the death* of Eleanor Stephenson; 1st, in that the will refers to the time of her dying with reference to the *life of her husband*, which shows the intention to confine the default of issue to her death. 3 *Bing.*, 13, *Glover vs. Monckton*. *Lewis on Perpetuities*, 229, in 52 *Law Lib.*, 176. 2 *Jarman on Wills*, 427, 429; 2nd, in that the first part of the will, which has reference to the life of her husband, controls the last part, and shows the intention to confine the default of issue to the time of her death. 1 *Keen*, 486, *Radford vs. Radford*. *Lewis on Perpetuities*, 240, 241, in 52 *Law Lib.*, 183. 6 *Md. Rep.*, 166, *Woodland & Wife vs. Wallis*.

2nd. Because the word *"issue"* being a word of limitation or purchase, according to the intention of the testator, the will in question shows the intention of the testator to give to Eleanor Stephenson only a life estate, and to use the word *"issue"* only as a word of purchase; 1st, in that there is a *trust* and a *legal estate* given by the will, so as to show that the purpose of the testator had reference to the person of the first taker. 3 *Md. Rep.*, 505, *Ware vs. Richardson;* 2nd, in that the limitations, as to the trust, show a life estate to be intended for the first taker, as words of *limitation* are used in the devise to the *issue*—"to such issue and *their heirs*"—and every particular disposition, in the will, is to be looked at to find out whether the intention is to use the word *"issue"* as a word of *purchase*. 1 *Ld. Ray*, 203, *Luddington vs. Kime*. 1 *Younge & Coll.*, *(Exch. Rep.,)* 589, *Lees vs. Mosley*.

3rd. The court is to put itself in the place of the testator, to ascertain his *intention* and carry it out, unless the intention be against some plain rule of law. 2 *Wilson*, 322, *Dodson vs. Grew*. 2 *Jarman on Wills*, 336.

4th. Where the *portions*, in which issue are to take, are designated in the will, as in this case, the intention becomes clear 4 *Term Rep.*, 299, *Cooper vs. Collis*. 12 *Wend.*, 83, *Turner vs. Livingstone*. 3 *Binney*, 148, *Findlay vs. Riddle*.

5th. The word *"issue"* means *"children,"* in this State, where there are no entails, and the presumption of our courts is so, unless the contrary appears. In the case of *Chelton vs. Henderson,* 9 *Gill,* 432, the word *"issue"* was construed as a word of *purchase,* that is, the *persons next to take,* and *no other person,* which means *"children."* That case is conclusive of this, for if the word *"issue"* means *"children,"* then it cannot be said that the limitation over here, in default of *issue,* means an *indefinite failure* of issue. See, also, 1 *Hen. & Munf.,* 240, *Smith & Wife vs. Chapman,* and 3 *Binney,* 148. Again, in the first part of the will, the word *"issue,"* when used in reference to the death of the husband, clearly means *"children,"* and the limitation over, in that event, on failure of *issue,* clearly means a *definite* failure of issue, and when we look to the latter part, we find the words are, *"on failure of such* issue," unquestionably referring to the issue *previously spoken of,* that is, *"children,"* and in such a case can there be a doubt what this testator *meant* by this provision? The case of *Doe vs. Goff,* 11 *East.,* 668, was a case where similar words—"such *issue"*—were used, and *Ld. Ellenborough* held, that the testator meant by them the persons to whom he had before referred to as *"heirs of his daughter's body,"* which latter words were there, also, held to mean *"children* or *issue of her body."*

6th. The will in question expressly limits a life estate to Eleanor Stephenson, and gives the *fee* expressly to her *issue,* and, in the same clause, gives her a perpetual interest in the personal estate, thereby showing his intention to limit the one and not limit the other. 1 *Hen. & Munf.,* 240. 12 *Wend.,* 83.

7th. But, in any event, the property here devised does not pass, under the *residuary clause* of this will, to the appellant, even if the limitation over is *void.* There can be, in this respect, no sensible distinction between a *lapsed* and a void *devise.* The *intention* of the testator, (which is to govern, in all cases of construction of wills,) by a residuary clause, is, to give to the residuary devisee or legatee what he had not, in the *previous portions* of his will, *disposed* of to others. To say that he *intended,* by such a clause, to give what he had pre-

viously already given, is absurd. But the case of *Lingan vs. Carroll*, 3 *H. & McH.*, 333, is a direct decision upon this very question, and is the law of Maryland, whatever may be the decisions elsewhere.

ECCLESTON, J., delivered the opinion of this court.

This is an action of ejectment, in which the judgment below was in favor of the defendant, the present appellee.

Both parties claim under Benjamin Harrison, deceased, who died seized and possessed of the premises now in dispute, in the year 1825, leaving a last will and testament, in which he devised the same, and also gave certain personal property, to his son, John Harrison, his heirs, executors and administrators, in trust, for the sole and separate use of his (the testator's) daughter, Eleanor Stephenson, wife of John Stephenson, during the life of her husband, and providing, "In case my said daughter should die before her said husband, and without leaving issue, then I give, devise and bequeath all the said real estate and personal estate to my said son, John Harrison, his heirs and assigns forever. But in case my said daughter should die before, or survive her said husband, leaving issue, then I give and devise all the said property to such issue, and their heirs, as tenants in common. But in case my said daughter should die without leaving issue, then I give, devise and bequeath all the said real estate to my son John, his heirs and assigns forever.

"*Item.*—It is my will and intention, that in case my said daughter should survive her husband, that then the trust hereinbefore created, shall cease and determine, and the legal estate in the said property shall vest in my said daughter, for and during her natural life, as regards the real estate, and absolutely in fee as respects the personal property, and after her death, in case she leave issue, that then such issue shall have a legal estate in fee in the said real property, and on failure of such issue, then to vest in my said son John and his heirs for ever.

"*Item.*—I give and devise to my daughter, Ann Tongue, all the rest and residue of my real estate whatsoever, to her and her heirs forever."

The proof shows, that after the decease of Benjamin Harrison, his son John, as trustee under the will, became seized and possessed of the land in dispute; that afterwards, by his permission, the said John Stephenson and Eleanor his wife, entered upon the premises. That in the year 1828, John Stephenson died, leaving Eleanor, his wife, surviving him, who became seized and possessed of the said land, and died in the year 1834, without ever having had issue. That Ann Tongue, the lessor of the plaintiff, was sister of the whole blood to the said Eleanor. That after the decease of Eleanor, the defendant entered into possession of the premises, claiming title thereto under the said John Harrison.

It also appears that John Harrison was brother of the whole blood to Eleanor Stephenson.

"The defendant prayed the court to instruct the jury, that if they should find the said Eleanor Stephenson survived the said John Stephenson, and afterwards departed this life, without ever having had issue of her body, the said land and premises, mentioned in the declaration, became thereby vested in the said John Harrison, in fee, by force and effect of the limitation thereof over to him on the failure of issue of the said Eleanor, and that their verdict ought to be for the defendant; and further insisted, that if the court should be of opinion, that the said Eleanor, in her lifetime, became seized of an absolute estate, in fee, in the premises, and died seized thereof and without leaving issue of her body, and if the jury shall find, that the said Eleanor was a sister of the whole blood to the said Ann Tongue and John Harrison, that then the premises descended to the said Ann and John, and the plaintiff will be entitled to recover no more than an undivided moiety of the premises, and prayed the court so to instruct the jury."

But the plaintiff objected to said prayers, insisting, that if the jury should find the facts offered in evidence by the parties, then the plaintiff would be entitled to their verdict for the entirety of the premises, in the declaration mentioned; and prayed the court so to instruct the jury.

The court, however, granted the defendant's prayers, and refused the prayer offered by the plaintiff; and thereupon the

plaintiff excepted to the granting of the defendant's prayers and the refusal of the plaintiff's.

The verdict and judgment being in favor of the defendant the plaintiff appealed; and he now insists, that the limitation over to John Harrison, after the decease of Eleanor Stephenson, without leaving issue, means an *indefinite failure* of issue, and therefore the limitation is void. And because Eleanor died, after the decease of her husband, without issue, the entire premises vested absolutely in the lessor of the plaintiff, as sole residuary devisee.

*Chelton vs. Henderson & Wife's Lessee,* 9 *Gill,* 432, has been referred to on both sides. But the defendant's counsel has urged it as a controlling authority in the interpretation of the will before us. There the testator gave to his son Isaac the use of the land in dispute, "to the said Isaac, during his natural life, and if it should please God, that the said Isaac should have issue born of his body, lawfully begotten, then such issue, after the death of the said Isaac, to have the aforesaid devised premises in fee-tail, but if the said Isaac should die without issue of his body, lawfully begotten," then the will provided, that the land should "descend" to the testator's son, Thomas, and his heirs in fee simple. The court below held, that Isaac, the son, took an estate-tail general, but this was reversed by the Court of Appeals. There the rule in *Shelley's case* was insisted upon in argument, as conclusive upon the question before the court, no matter what may have been the intention of the testator, as disclosed in the provisions of his will. It was held, however, that, by the explicit terms of the will, it was undoubtedly the manifest intention of the testator, that his son Isaac should have but a life estate in the premises, and that if he should have *"issue,"* such *"issue,"* after his decease, should have the devised premises in fee-tail. And this intention was carried into effect by the decision.

The rule in *Shelley's Case,* has been long recognised and adhered to both in England and in this State, and we do not mean to deny or disregard its authority; nor do we understand the decision in *Chelton vs. Henderson,* as designed to exclude the operation of that rule in the interpretation of a will, to any

greater extent than to hold, that where the intention of the tes-
tator to create no larger estate in the first devisee than for life,
is *clearly expressed by the will*, such intention must prevail.

In the case alluded to, the will was construed as giving but
a life estate to the son of the testator. And if the language
of that will was sufficient to manifest a clear intention to create
but a life estate in the son, surely the will before us must be
considered as furnishing conclusive evidence of an intention
to give Eleanor Stephenson no more than a life estate.

It is evident, from the provisions contained in it, that the
testator had the requisite information to enable him to create a
trust, to give both a legal and an equitable estate, and also to
give either a fee simple or a life estate. In the first place, he
created a trust for the use of Eleanor, during the life of her
husband. Then in case she became the survivor of her hus-
band, the trust was to cease and the legal estate to vest in her,
but expressly, *"for and during her natural life,* as regards the
real estate, and *absolutely in fee* as respects the personal prop-
erty."  And when providing for the issue of Eleanor, after
her death, in the first instance, in case of her leaving issue,
the property is given to such issue *and their heirs* as tenants
in common.  If, after the cessation of the trust and the vest-
ing of the legal estate in her, she should die leaving issue,
then the will directs, that such issue shall have a legal estate
*in fee,* in the realty.  And the premises are given to John
Harrison in fee simple, either in the event of the decease of
Eleanor *without issue,* or in case of her leaving issue, and
*on failure of such issue.*

By these provisions we think there is manifested a clear in-
tention to give the property to Eleanor Stephenson, for life
*only*, and then to her issue, if she should leave any; issue
being here considered as a word of purchase, and not of limi-
tation; which we understand to be in accordance with the
effect given to the word issue in *Chelton vs. Henderson.*

There the first devisee, Isaac, was held to take a life estate
only, and his issue a fee-tail, by the words of the will; which
in this State, under our act of Assembly amounts to a fee
simple.

The next inquiry is, whether the devise to John Harrison is void, because too remote?

Authorities need not be cited to show, that if the event is an indefinite failure of issue, on which John should take the estate, the devise to him is void.

In *Newton vs. Griffith*, 1 *H. & G.*, 125, it is said, "The rule is, not that the '*limitation*' over must take effect within a life in being, or not at all, but that the '*contingency*' on which it is made to depend, must happen, (if at all,) within the compass of a life or lives in being, and twenty-one years and a few months afterwards; and the distinction is a very clear one."

Again, on page 126, the court say: "The several general expressions, 'having no issue,' 'leaving no issue,' and 'without issue,' when used in relation to real estate, meaning, according to the settled legal construction, an indefinite failure of issue, they must, whenever they are found in a will, be taken in their technical legal sense, unless there be something clearly demonstrating a different intention on the part of the testator, and restricting them to a failure of issue at the death of the first taker."

The expressions thus cited from *Newton vs. Griffith*, are similar to most of those, on the like subject, which occur in the will before us.

If it should be said, that the first contingency, on which John should take, is made to depend upon the death of Eleanor without issue, during the life of her husband, and, therefore, the intention was to provide for a definite failure of issue—definite because required to occur before the decease of her husband—still there are two other provisions not restricted or limited to any such event; they certainly are not, *in terms*, so restricted or limited; but in one case the will simply provides for the event of the death of Eleanor, "without leaving issue," after surviving her husband; and the last provision on the subject may be construed, without any forced construction of the language, as providing for a case of her *leaving issue*, and the *subsequent failure of such issue*. It will therefore be difficult to discover, in the present will, a "*clear manifestation*" of an intention by the testator to restrict the failure of the issue of

54      v. 13.

his daughter to the period of her decease.   The expressions used on this subject should, therefore, be construed according to the "technical legal sense" ascribed to such expressions, when used in a will with respect to real estate.   See, also, *Biscoe vs. Biscoe*, 6 *G. & J.*, 232, 236 and 237.   *Edelen vs. Middleton*, 9 *Gill*, 161.

In *Torrance vs. Torrance*, 4 *Md. Rep.*, 11, the court had under consideration the portion of the estate of which Charles Torrance died seized, which his daughter, Dorcas, took under his will and the will of her mother, by virtue of the power conferred in his will.   Dorcas was held to take but a life estate, the fee being conferred upon her children by the following provision, "And from and immediately after the decease of the said Dorcas, then that the said share shall become the estate of all and every child or children she may have, and be equally divided between them, their heirs, executors, administrators and assigns, for ever, as tenants in common, share and share alike."

Elizabeth Torrance, the mother, had, besides Dorcas, two other daughters, Mary and Louisa, for whom the mother's will made provisions, similar to those for Dorcas.   Then follows this clause: "In the event of the decease of any of my aforesaid daughters, without leaving any child or children, or descendants of such child or children, the part or share of the estate hereinbefore devised to her or them, so dying, shall descend to, and be equally dividend between, all my surviving children, and their respective representatives, as tenants in common, share and share alike."

Dorcas died without issue, never having been married.

The court held that, under the authority of *Newton vs. Griffith*, and all the leading and well adjudicated cases upon the subject, both in England and in this country, "the expression, *dying without leaving any child or children, or descendants* of such child or children, amounts to an indefinite failure of issue, and that the limitation over being too remote, is consequently void."   They then say: "*Descendants* and *issue*, in this instance, mean the same.   The devisee in the present will, it will be seen, can only take effect over, at the

period when the issue or discendants of the first taker shall become extinct, and when there are no longer any descendants of the issue, or children of the grantee, without any reference to any particular time or any particular event."

The court, having decided the devise over to be void, they held that the portion of the estate in which Dorcas had a life estate, descended upon her decease without issue, to the heirs at law of Charles Torrance, her father, as undisposed of property.

If in that case *descendants of children* and *issue* are regarded as the same, and there the devise over is considered void, as depending upon an indefinite failure of issue, we think the devise over to John Harrison must also be void, because it is made to depend upon a contingency too indefinite and remote.

This being so, it becomes necessary to consider whether the land in dispute must descend to the heirs at law of Benjamin Harrison, or whether, upon the death of Eleanor Stephenson, without issue, it passed to Ann Tongue, the lessor of the plaintiff, as sole residuary devisee.

The plaintiff insists, although it may be true that in case of a lapsed devise the heir at law will be entitled to the property, yet where a devise is void by the rules of law, the estate passes to the residuary devisee, as a general rule. The defendant's counsel contends that where the devisee named in the will does not take, whether it be in consequence of a lapsed or a void devise, the heir at law becomes entitled, and not the residuary devisee, in either event. He refers to the case of *Lingan vs. Carroll*, 3 *H. & McH.*, 333, as a decision in favor of the former and adverse to the latter.

The bill in that case had been filed in chancery by the residuary devisees, claiming the estate, because of a void devise. The defendant demurred, and the bill was dismissed, because it "contained no matter of equity." In the opinion of Chancellor Hanson, as reported, he held "the law to be settled, that, in case of a lapsed devise, the land should pass to the heir and not to the residuary devisee, and that there was no *solid distinction* between the case of a lapsed devise

and the case of a devise void by the rules of law, it being manifest, in both cases, that the testator did not intend the land *de facto* devised to go to the residuary devisees.''

Upon an appeal taken by the complainants, and argued by distinguished counsel, the decree of the chancellor was affirmed, in 1793. But there is no report of any opinion given by the Court of Appeals.

In respect to this question there has not been perfect uniformity among the decisions. It must be conceded, however, that the preponderance of *authority*, outside of Maryland, is in favor of the residuary devisee. But, inasmuch as the decision in *Lingan vs. Carroll*, was made by an able chancellor, and affirmed by the Court of Appeals, nearly seventy years ago, and no reference having been made to any decision in this State, overruling it, or even doubting its correctness, we may suppose it has been followed and acquiesced in by the legal profession as sound Maryland law. We are therefore not inclined to overrule that case, in deference to other decisions. And more especially so, believing, as we do, with Chancellor Hanson, that there is no *solid distinction* between the case of a lapsed devise and the case of a devise void by the rules of law, in regard to a question, whether the heir at law or the residuary devisee should take the estate?

In this view of the subject the lessor of the plaintiff is not entitled to the whole of the premises under the residuary devise, as insisted upon by her counsel, but she is entitled to an undivided moiety, as heir at law of her father, Benjamin Harrison. He left three children, John Harrison, Eleanor Stephenson, and Ann Tongue. Eleanor died without issue, and John died leaving children. Ann is therefore entitled to one undivided half of the land in dispute; and for the purpose of enabling her to recover the same, the judgment below will be reversed and a *procedendo* awarded.

*Judgment reversed and procedendo awarded.*